909 F.2d 711
 30 Fed. R. Evid. Serv. 882
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony COLOMBO, Vincent Colombo, Joseph Colombo, Jr., Peter
Ludovico, Philip Rossillo, Alphonse Merolla, William F.X.
Klan, Antonio Lo Piccolo, Frank Sparaco, Michael Detore,
Vincent Casucci, Frank Buscemi, John De Liso, Vincent La
Rosa, Joseph La Rosa, Salvatore Clemente, Thomas Di Donato,
Salvatore Cardella, Joseph La Bella, Joseph Rudd, Jerome
Baptist, Leslie Kaye, John Lombardo, Vincent Delandro, Frank
Frisone, Defendants,
Appeal of William F.X. KLAN, Defendant.
 No. 613, Docket 88-1266.
 United States Court of Appeals,
Second Circuit.
 Submitted after Remand Feb. 9, 1990.
Decided July 23, 1990.
 
 Barry M. Fallick, New York City (Rochman, Platzer, Fallick & Rosmarin, New York City, of counsel), submitted a brief for defendant-appellant William F.X. Klan.
 Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Frank J. Marine, Atty., U.S. Dept. of Justice, Washington, D.C., of counsel), submitted a brief, for appellee U.S.
 Before KEARSE, CARDAMONE and WINTER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 Before us is United States v. William F.X. Klan, 869 F.2d 149 (2d Cir.1989), a case we remanded to the United States District Court for the Eastern District of New York (Korman, J.) to determine whether a juror had violated her oath during voir dire when she failed to mention, in response to a question regarding whether she had close relatives who were lawyers, that her brother-in-law was a government attorney. The district court conducted a hearing and found she had not intentionally withheld this information, and therefore denied the motion to vacate on that basis appellant Klan's conviction.
 
 
 2
 Because this finding by the district court was not clearly erroneous, we affirm it and turn to the remaining issue left open in our prior opinion--whether the improper admission of evidence regarding the rape and sodomy of a victim of the robbery conspiracy was harmless error. See 869 F.2d at 153 n. 4. We cannot conclude that the admission of this inflammatory proof did not substantially influence the jury's verdict and that it was harmless error. As a consequence, appellant's conviction must be reversed and the case remanded for a new trial.
 
 FACTUAL BACKGROUND
 
 3
 The relevant facts are set forth in our prior opinion, with which familiarity is assumed. Klan was convicted after a jury trial for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962(d) (1988), and conspiracy to distribute narcotics, 21 U.S.C. Sec. 846 (1988). His first trial resulted in a hung jury.
 
 
 4
 Appellant, an attorney, was alleged to have been involved in a conspiracy with one of his former clients, Peter Lodovico, to facilitate the criminal ventures of a New York City organized crime family. The government asserted that Lodovico was an associate of the Colombo family who obtained information about potential robbery "scores" from tipsters, including Klan. The tipsters were later given a share of the proceeds of the crime.
 
 
 5
 The government's primary witness was Anthony Ferraro, a former client of Klan and a participant in the robberies, who testified in exchange for government immunity from prosecution on several unrelated crimes. He stated that Klan had told Lodovico about three former law clients who were likely to have cash, narcotics or valuables in their home. All three were subsequently robbed. Klan took the stand in his own defense and denied involvement in any of these crimes.
 
 
 6
 In the case at hand the proof at trial showed that a gang of robbers entered the home of one of Klan's former clients, Harold Finley, because they had been tipped-off allegedly by Klan that Finley might have in his possession gold bars and cocaine. Upon finding neither gold nor cocaine, the participants raped and sodomized Finley's wife. Following the admission of this evidence at trial, Klan made a motion for mistrial, which the trial court denied.
 
 
 7
 Klan appealed his conviction to our Court contending, inter alia, that he was denied a fair trial by a juror's deliberate deceit during voir dire, and by the government's soliciting the testimony that Ms. Finley was raped and sodomized during the robbery. Appellant based his first claim upon an affidavit and supplemental affidavit of an alternate juror, Florence Kennedy, who averred that another juror, Carla Geller, had admitted that her brother-in-law was an attorney for the government and that she did not inform the Magistrate of this relationship when she was asked whether she had any relatives involved in law enforcement, working at the Eastern District United States Attorney's Office, or who were lawyers. According to juror Kennedy, Ms. Geller failed to disclose this information because she wanted to sit on the trial. As a result of this charge, we remanded the matter to the district court for a determination of whether Ms. Geller's brother-in-law was a government attorney and, if so, whether she had deliberately withheld this fact during voir dire. If the district court so found, we directed it to reverse Klan's conviction due to the absence of an impartial jury. 869 F.2d at 152.
 
 
 8
 At the hearing, the district court heard undisputed testimony that "M[s.] Geller's brother-in-law is the Acting Regional Director for Housing for [the Department of Housing and Urban Development (HUD) ]. Although he was admitted to the Bar in 1957 or 1958, and practiced for a year, he has not practiced law for 30 years and '[h]is job [at HUD] does not call for any legal work whatsoever.' " The district judge noted that this testimony alone contradicted Ms. Kennedy's affidavits which suggested that Ms. Geller's brother-in-law was either an attorney for the government or an Assistant United States Attorney.
 
 
 9
 Further testimony was taken to determine whether Ms. Geller deliberately lied when asked if she had any close relatives who were attorneys. As to this issue, Judge Korman found that Ms. Geller did not deliberately deceive the court. He credited the testimony of Ms. Geller that "she did not consider her brother-in-law to be a lawyer because he never practiced law" and that "she gave a negative response to the Magistrate's question regarding close relatives who were lawyers because she 'didn't think [the question] pertained to him.' " This credibility finding was bolstered by the fact that Ms. Geller had no motive to lie because the Magistrate only excused those jurors with relatives who practiced criminal law or were involved in law enforcement. The district court further noted that Ms. Kennedy's veracity was undermined by her expressed sympathy for Klan, inconsistent representations in her affidavits regarding her conversation with Ms. Geller, and misrepresentations made in one of her affidavits about another juror.
 
 DISCUSSION
 A.
 
 10
 On this appeal appellant contests the district court's determination that reversal was not warranted by Ms. Geller's failure to inform the court that her brother-in-law was admitted to the bar and worked for the government, albeit in a non-legal capacity. The trial court's finding that Ms. Geller had not deliberately deceived the Magistrate during voir dire was not clearly erroneous. See, e.g., United States v. Payden, 768 F.2d 487, 491 (2d Cir.1985) (clearly erroneous standard applies because assessment of witness's credibility within the province of the trier who has heard the testimony and observed her demeanor); United States v. Rios, 856 F.2d 493, 495 (2d Cir.1988) (per curiam). Because the juror had no intention to withhold information or to be nonresponsive to the Magistrate's voir dire, reversal of Klan's conviction on this claim is unwarranted. Cf. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555-56, 104 S.Ct. 845, 849-50, 78 L.Ed.2d 663 (1984).
 
 B.
 
 11
 The question of whether it was harmless error for the government to introduce evidence depicting the rape and sodomy of Ms. Finley during the robbery of her home is left to be decided. In our prior opinion we determined that this evidence was not properly admitted under Fed.R.Evid. 403 because "any use of this evidence as background, given its slight relevance, was 'substantially outweighed by the danger of unfair prejudice.' " 869 F.2d at 153.
 
 
 12
 Of course, not all trial errors require reversal. See Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Although deciding whether an error at trial was harmless is not always easily resolved, authority construing the doctrine of harmless error abounds. An error only may be considered harmless if our " 'conviction is sure that the error did not influence the jury,' " United States v. Ruffin, 575 F.2d 346, 359 (2d Cir.1978) (quoting Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946)), and that "it is 'highly probable' that the error did not contribute to the verdict," United States v. Corey, 566 F.2d 429, 432 (2d Cir.1977).
 
 
 13
 Harmless error often is found to exist where there is sufficient corroborating evidence to support the conviction, see Corey, 566 F.2d at 432. The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict. 3A C. Wright, Federal Practice and Procedure Sec. 854, at 305 (2d ed. 1982). Professor Wright's treatise includes, "a court should be especially loath to regard any error as harmless in a close case, since in such a case even the smallest error may have been enough to tilt the balance." Id. at 306; see also United States v. Garguilo, 310 F.2d 249, 254 (2d Cir.1962); United States v. Persico, 305 F.2d 534, 536 (2d Cir.1962); cf. United States v. Torres, 901 F.2d 205, 240 (2d Cir.1990) (error deemed harmless in light of strong evidence establishing defendant's guilt).
 
 
 14
 We believe the admission of proof that a robbery victim was raped and sodomized may well have contributed to Klan's conviction. The prosecutor acknowledged in a conference outside the presence of the jury that the introduction of the sodomy and rape evidence could warrant reversal. Noting the brutality of the crime, he stated: "We are not going into any of the details as we did this summer during the [first] trial. We will ask conclusory questions of Ms. Finley: Were you sexually assaulted ... will be the extent of the inquiry. I don't want to have to retry this case after a reversal from the Second Circuit." Despite recognizing the very real possibility that any proof of this kind would put the government's case at risk, the prosecutor during the second trial repeatedly harped on the base crime committed against Ms. Finley. He asked Ferraro whether he "rape[d] her or sodomize[d] her," asked Ms. Finley whether she was "assaulted in the bedroom," and asked Klan a number of times about his knowledge of the "rape and sodomy."
 
 
 15
 Evidence linking a defendant to a rape he is not charged with has always been considered extremely prejudicial. In United States v. Krulewitch, 145 F.2d 76 (2d Cir.1944) (L. Hand, J.), we observed that its prejudicial effects outweighed its probative value because it tends "to muddle the jury, and to lead them to convict the accused because he was in general so loathsome." Id. at 80. Although the testimony in Krulewitch, established that the defendant himself raped a woman, assertions suggesting that a defendant may have facilitated a rape are nearly as pernicious. Cf. United States v. Frick, 588 F.2d 531, 537 (5th Cir.) (introduction of evidence that defendant paid co-conspirator's secretary for sexual relations not admissible and not harmless error), cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 385 (1979).
 
 
 16
 More importantly, the evidence offered to prove that Klan conspired to distribute narcotics passed the sufficiency-of-the-evidence test by a "hair's breadth." See United States v. Lefkowitz, 284 F.2d 310, 315 (2d Cir.1960). In letting the narcotics count go to the jury, Judge Korman thought it barely sufficient: "It is very thin, but I think it is probably barely enough to go to the jury. I really think [the prosecution] ought to rethink that [charge.]"
 
 
 17
 The government's entire case on the narcotics charge rested upon the immunized testimony of Ferraro, who testified that Klan tipped Lodovico off that the Finleys might have cocaine in their house. Ferraro's only other statement regarding narcotics was that Lodovico had been informed by Klan that another client of his, Alexander ("Skippy") Gardegna, had quaaludes at his home and that Klan had received this information from Gardegna's brother-in-law, Robert Flathmann. But, Gardegna had only non-narcotic caffeine tablets--quaalude look-alikes--that he sold in a mail order business he ran out of his home. Flathmann was aware of this and had ordered 100,000 caffeine pills that arrived the day of the Gardegna robbery. Testimony also established that Flathmann and Lodovico knew each other. No narcotics were found in either the Finley or Gardegna home, nor was there any evidence that Klan received payment for his alleged information. When Klan took the stand he denied providing any of the charged information.
 
 
 18
 The jury's resolution of this case rested upon whether it credited the testimony of Ferraro or Klan. In Klan's first trial the jury was unable to make this close call, resulting in a mistrial. In the second trial no new evidence was introduced, nor were any additional witnesses called. Although we recognize that the bare record reveals more evidence of the sexual assault was before the first jury than was before the second one, we think it speculative to give this factor undue weight. In present circumstances--where the veracity of the defendant is crucial to his defense--we are unpersuaded that the prejudicial introduction of evidence that a robbery victim was raped and sodomized during the course of the conspiracy was harmless error.
 
 
 19
 Concededly, the trial court gave curative instructions limiting the jury's consideration of the rape and sodomy evidence. Judge Korman advised the jury twice during the trial and again in his charge that the evidence of rape and sodomy was admitted only as background for the surrounding events and that the jury should not consider this evidence in determining its verdict. But this curative instruction that the jury was to use such testimony merely as background does not change our conclusion in this case where the prosecution dwelled on the rape and sodomy evidence. Cf. United States v. Kiszewski, 877 F.2d 210, 216-17 (2d Cir.1989) ("isolated" reference to defendant's refusal to take lie detector test rendered harmless error by timely instruction). Although ordinarily we presume that a jury adheres to the curative instructions of the trial court, this presumption is dropped where "there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions" and the evidence is 'devastating' " to the defense. Greer v. Miller, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987) (quoting Richardson v. Marsh, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987) and Bruton v. United States, 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968)).
 
 
 20
 We think the presumption that the jury was able to follow the court's limiting instructions has been negated here. Evidence linking a criminal defendant to a rape and sodomy does more than tarnish a defendant's character before the jury; it brands him as the kind of reprehensible person who would "sic" his criminal confederates on an innocent victim of the robbery. Cf. Krulewitch, 145 F.2d at 80. With such a negative vision of the defendant, there is an "overwhelming probability" that the jury was unable to consider dispassionately the evidence of such a violent crime simply as background for the surrounding events. By its very shocking nature, it becomes the centerpiece of the trial. Further, because Klan's credibility was critical, the admission of this kind of evidence demolished his defense. United States v. Semensohn, 421 F.2d 1206, 1209 (2d Cir.1970).
 
 
 21
 Consequently, in the circumstance of a very close case, where the prosecutor improperly dwelled on the rape and sodomy of a robbery victim--despite his acknowledgment of the risk and assurance that he would not introduce such proof--the trial court's limiting instructions were in our view insufficient to render the resulting error harmless.
 
 CONCLUSION
 
 22
 The judgment of conviction is accordingly reversed and the case remanded to the district court for a new trial where we expect that no mention of the sexual assault will be made. See United States v. Klan, 869 F.2d at 153.
 
 WINTER, Circuit Judge, dissenting:
 
 23
 I respectfully dissent.
 
 
 24
 I agree with my colleagues that Judge Korman's findings regarding the answers given by the juror during the vior dire are not clearly erroneous.
 
 
 25
 I would, however, affirm the conviction because I believe that admission of the evidence concerning rape and sodomy was harmless error. This, I readily concede, is a very close question, and I agree with my colleagues that evidence of a defendant's participation in a rape usually is highly prejudicial in a criminal trial on unrelated charges. However, the evidence here in no way indicated that the defendant participated or acquiesced in, or had any reason to anticipate, the rape and sodomy. I believe, therefore, there is no reason to conclude that the jury's verdict was affected by it.