**Ronald DAVIDSON, Plaintiff–Appellant,**

**v.**

**C.O. John J. SMITH, Sgt. Richard Windle, and Lt. Edward J. Kolor, Defendants–Appellees.**

**No. 247, Docket 91–2365.**

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1993.

Decided Nov. 3, 1993.

---

Carolyn E. Bassani, New York City (David S. Versfelt, Donovan Leisure Newton & Irving, on the brief), for plaintiff-appellant.

Barbara B. Butler, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, PIERCE and MINER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

When a lawyer violates a trial court's order not to elicit particular testimony that has been ruled prejudicial, the lawyer risks reversal of any favorable judgment that may be obtained. This appeal presents the issue whether, in the circumstances of this case, such conduct should incur that consequence. The issue arises on an appeal by plaintiff-appellant Ronald Davidson, an inmate at Attica Prison, from the July 12, 1991, judgment of the District Court for the Southern District of New York (Louis L. Stanton, Judge) rejecting, after a jury verdict, his claim against New York State correctional officers for damages pursuant to 42 U.S.C. § 1983 (1988). Plaintiff challenges the action of defendants' counsel in eliciting a reference to plaintiff's prior confinement in an institution for the mentally ill, in violation of a ruling not to refer to his psychiatric history. Because the deliberate violation of the District Judge's order may have seriously undermined the plaintiff's credibility before the jury in a close case, we reverse and remand for a new trial.

## Background

*The Conflicting Testimony.* Plaintiff's suit arises out of events alleged to have occurred at New York's Downstate Correctional Facility ("Downstate"), a processing station for the transfer of prisoners. On June 5–6, 1984, Davidson was at Downstate while in transit to Attica Prison. He testified that an altercation with Correctional Officer John Smith

culminated in Smith's interfering with his right of access to courts by destroying some of the materials in his files relating to 30 pending cases and misdirecting the remainder of his legal materials. Davidson testified that Smith taunted him with an admission of having destroyed some of his legal papers, and that documents relating to more than a dozen of his cases were never recovered. It is undisputed that Davidson did not receive any of the folders containing his legal documents until more than two weeks after he returned to Attica, although prison officials testified that such delay could occur in the normal course of transporting a prisoner's belongings. Davidson further testified that he reported Smith's alleged misconduct to defendants Sergeant Richard Windle and Lieutenant Edward Kolor.

Smith acknowledged that there had been an altercation and that he had access to the area where Davidson's belongings, including his legal materials, had been stored, but he denied that he had damaged or interfered with Davidson's property in any way. Windle and Kolor testified that they had no recollection of any inmate's informing them that a guard had thrown out his legal files.

*The Motion for Mistrial.* At trial, plaintiff's counsel requested and received from Judge Stanton an order instructing the defendants not to inquire into the psychiatric history of the plaintiff, specifically including plaintiff's treatment at the Matteawan State Hospital between 1972 and 1976. Judge Stanton excluded such evidence as too remote under Rule 403 of the Federal Rules of Evidence, which requires that the probative value of evidence be weighed against the danger of unfairly prejudicing, confusing, or misleading the jury.

During the direct testimony of Sergeant Windle, the last witness at the trial, defendants' counsel asked whether Windle had ever been stationed at the same facility as the plaintiff prior to the alleged incident. Windle responded, "Only recently, I came up with that knowledge, but I didn't know it at that time. It was under his other name, Finklestein, and it was when he had escaped out of Matteawan Criminal Facility." Plaintiff's counsel objected and was overruled.

Counsel for the defendants then asked Windle, "What is the full name of the Matteawan prison?" Windle responded, "Matteawan Facility for the Criminally Insane."

When the jury was next excused, plaintiff's counsel moved for a mistrial on the ground that defendants' counsel had violated Judge Stanton's instruction not to refer to the plaintiff's psychiatric history. Judge Stanton agreed that the question was improper and that its "only purpose" had been to inform the jury that Davidson had been in a mental institution. He nonetheless denied the plaintiff's motion for mistrial, and issued a curative instruction to the jury to "obliterate that testimony from your minds."

Appellant contends that the testimony so prejudiced the jury that a new trial is required. Defendants' counsel concedes that the question was improper, but argues that the plaintiff's case was so weak that an isolated reference to his psychiatric history was harmless in light of the District Judge's curative instruction.

### Discussion

In *United States v. Colombo,* 909 F.2d 711 (2d Cir.1990), we reversed a jury's conspiracy conviction and remanded for a new trial on the ground that the Government had improperly elicited testimony regarding offenses of rape and sodomy in which the defendant was not involved. In assessing the impact of the improper testimony on the jury, we stated, "The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict." *Colombo,* 909 F.2d at 714. Unlike the criminal trial in *Colombo,* this appeal pertains to a civil trial. Both cases, however, involve a governmental attorney improperly eliciting testimony, where the harm was sought to be remedied by a curative instruction to the jury.

Defendants' counsel does not dispute that here, as in *Colombo,* the strength of the case is relevant in determining whether the error was harmless, but contends that the plaintiff's case was weak. The record, however, contradicts defendants' counsel's contention. Plaintiff's counsel had established that

Davidson was an unusually public-spirited inmate who had tutored with Literacy Volunteers of America, provided a life skills course to inmates, and received a grant to write about prison conditions. In a side-bar discussion, Judge Stanton characterized defendants' counsel's efforts to challenge Davidson's credibility as "a somewhat ineffective ad hominem attack on the witness," and advised the lawyer that he was "losing the jury." Moreover, cross-examination of the defendants had raised questions as to their credibility and memory. Defendant Windle, for example, testified in pretrial deposition that he had never been sued by an inmate before, a claim refuted by evidence at trial.

In twice denying the defendants' motions for a directed verdict—first at the close of plaintiff's case and later at the close of all the evidence—the District Judge apparently determined that, viewing the evidence in the light most favorable to Davidson, reasonable jurors could have arrived at a verdict in his favor. *See Hendricks v. Coughlin,* 942 F.2d 109, 112 (2d Cir.1991). The credibility of the witnesses on each side in this case was crucial to the jury's verdict, and it cannot be said with certainty that the improperly elicited testimony did not tip the credibility balance in favor of the defendants.

■ Defendants' counsel argues that the testimony was nonetheless rendered harmless by Judge Stanton's instruction to the jury to obliterate the testimony from their minds. While the utility of curative instructions "is not to be invariably rejected, neither should it be invariably accepted." *See United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). Specifically with respect to Rule 403 of the Federal Rules of Evidence, we have stated:

> [T]he balancing required by Rule 403 for all evidence would not be needed if a limiting instruction always insured that the jury would consider the evidence only for the purpose for which it was admitted. Giving the instruction may lessen but does not invariably eliminate the risk of prejudice notwithstanding the instruction.

*Id.*

■ The District Court, in deciding to exclude the plaintiff's psychiatric history under Rule 403, must have believed that the danger that such evidence would unfairly prejudice the jury outweighed any probative value. *See* Fed.R.Evid. 403. We agree with the District Court that evidence regarding the plaintiff's confinement at an institution for the criminally insane more than 15 years prior to the trial posed a significant danger of unfairly prejudicing the jury. *Cf. United States v. Torniero,* 735 F.2d 725, 726 (2d Cir.1984) (noting that "[a]ny issue involving insanity evokes extraordinary interest and, indeed, passion"), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). We also agree with the District Court that counsel's question prodding Sergeant Windle to specify the full name of the institution where he had met the plaintiff could have served no purpose other than to bring to the jury's attention the plaintiff's psychiatric history. Indeed, the record supports an inference of a deliberate, bad-faith maneuver. Not content with having the prison identified as "Matteawan Criminal Facility," counsel pressed on, apparently by pre-arrangement with the witness, to have him identify the prison as "Matteawan Facility for the Criminally Insane." This response was elicited in flagrant disregard of the Court's prior instruction and was probably inaccurate. According to the New York State Office of Mental Health and the Official Directory of State and Licensed Facilities for the Mentally Disabled, the full official name of the former Matteawan facility was the Matteawan State Hospital.

In a case involving a fact pattern similar to the case at bar, the Seventh Circuit noted that "the efficacy of [a curative] instruction is always uncertain, and where the misconduct giving rise to it is as serious as it was in this case stronger medicine may be needed." *Joseph v. Brierton,* 739 F.2d 1244, 1247 (7th Cir.1984). *Joseph* also involved an appeal after a jury verdict for prison officials in a section 1983 action. At trial, the District Judge had granted defendants' motion to forbid plaintiff's counsel from mentioning that defendants would be indemnified if they lost. With plaintiff thus silenced on the issue, defendants' counsel urged the jury in his closing argument to consider the financial impact of a judgment against his clients.

**8**

After plaintiff's counsel objected, the Judge issued a curative instruction, but declined to order a mistrial. The Seventh Circuit reversed, concluding that the "curative instruction ... could not have cured." *Id.* at 1248.

There can be no litmus test for determining when the eliciting of prejudicial testimony, in violation of a court order, warrants a new trial. Several factors combine to require a remand in this case. The testimony related to the sensitive issue of mental illness; it was elicited, apparently by pre-arrangement, by counsel representing public officials; it was given close to the end of the trial; it risked undermining the plaintiff's credibility in a close case where the parties' conflicting testimony was virtually the only evidence; and a retrial would not take long. In these circumstances, we conclude that a curative instruction is not a sufficient remedy. *See Throckmorton v. Holt,* 180 U.S. 552, 567–69, 21 S.Ct. 474, 480–81, 45 L.Ed. 663 (1901); *Joseph v. Brierton,* 739 F.2d at 1248; *United States v. DeDominicis,* 332 F.2d 207, 210 (2d Cir.1964).

The judgment is reversed, and the case is remanded for a new trial.