UNITED STATES of America,
Appellee,

v.

Juan Jose BOTERO–JARAMILLO, also known as Juancho, Luis Carlo Jaramillo–Franco, Gabriel Leopoldo Castro–Rivera, Frank Morales, Angela Arango–De Ruiz, Luz Stella Gomez, Adolfo Leon Viana and Fnu Lnu, Defendants,

Fernando Ramirez–Zapata,
Defendant–Appellant.

Docket No. 02–1611.

United States Court of Appeals,
Second Circuit.

Dec. 14, 2004.

Jeremy Gutman, New York, NY, for Appellant.

Richard S. Hartunian, Assistant United States Attorney for the Northern District of New York (Glenn T. Suddaby, United States Attorney, Robert P. Storch, Senior Litigation Counsel), Albany, NY, for Appellee.

PRESENT: CALABRESI, SACK, and RAGGI, Circuit Judges.

### SUMMARY ORDER

The appellant, Fernando Ramirez–Zapata, appeals his conviction for conspiracy to distribute cocaine base, possession with intent to distribute and distribution of cocaine base, conspiracy to commit bribery, and bribery. Ramirez–Zapata contends that the district court erred, first, by admitting as evidence of the charged conspiracy and without a limiting instruction documents and other evidence seized nearly four years after the conclusion of the conspiracy as alleged in the indictment, and second, by allowing a law enforcement witness to testify to the meaning and significance of those documents.

This Court reviews the district court's evidentiary rulings for abuse of discretion. *United States v. Schultz*, 333 F.3d 393, 415 (2d Cir.2003). In order to establish an abuse of discretion, the district court's ruling must be arbitrary or irrational. *Id.*

Ramirez–Zapata focuses his attention on four items that were found inside the bedroom of his Florida home at the time of his arrest in September 1997, three years and ten months after he was indicted for his role in a conspiracy that, according to the indictment, terminated "on or about" the date of the indictment. This evidence consists of: (1) an address book that the government contends is a drug ledger; (2) a faxed letter with a "Medellin" dateline; (3) documents and credit cards bearing names the government contends are aliases; and (4) a large quantity of cash in a briefcase. Ramirez–Zapata's brief on appeal also references testimony concerning cars parked outside his home that were titled in the name of one of his alleged co-conspirators, though it is unclear whether he is also challenging the admission of this testimony. Ramirez–Zapata contends that because of the temporal gap between the termination of the alleged conspiracy and his arrest, this evidence should have been evaluated under Fed.R.Evid. 404(b) as proof of "other," uncharged crimes, and not as proof of his participation in the charged conspiracy. Ramirez–Zapata contends that, under the Rule 404(b) standard, the evidence should not have been admitted because it was offered as proof of his character "in order to show action in conformity therewith," which is improper. Fed.R.Evid. 404(b). Alternatively, he argues that the jury should have been instructed not to consider the evidence for this impermissible purpose.

As an initial matter, we may readily dispose of any challenge Ramirez–Zapata may be making to the testimony concerning the cars parked outside his Florida home. The fact that the two vintage Chevrolet Corvettes were titled in the name of Adolfo Viana, an alleged co-conspirator of Ramirez–Zapata who testified against him, serves to corroborate Viana's testimony concerning their relationship, particularly since Viana was himself in prison at the time of Ramirez–Zapata's arrest. This evidence directly incriminates Ramirez–Zapata in the charged conspiracy. We have no basis for concluding that the district court abused its discretion when it determined, pursuant to Fed. R.Evid. 403, that the probative value of

this evidence outweighed any danger of unfair prejudice to Ramirez–Zapata.

■ The remaining evidence presents a closer question, but one that we need not address. We conclude that if the district court was in error in this regard, the error was harmless even without the requested jury instruction relating to it because of the abundance of other trial evidence of Ramirez–Zapata's guilt. *See United States v. Jean–Baptiste*, 166 F.3d 102, 108–09 (2d Cir.1999); *United States v. Terry*, 702 F.2d 299, 317 (2d Cir.), *cert. denied*, *Williams v. United States*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983), *Guippone v. United States*, 464 U.S. 992, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983). This evidence—including the testimony of co-conspirator Viana and of an undercover police officer who had extensive dealings with Ramirez–Zapata by telephone, many of them tape-recorded and played for the jury—was the focus of the prosecution's case. In his summation the prosecutor described the undercover officer's testimony as "the heart and soul" of the case, Viana's testimony as "very critical and important," and the tape-recordings as "most compelling of all, most important of all." The transcript of the government's summation consumes some thirty-three pages, less than two of which are devoted to the documents Ramirez–Zapata now challenges. We conclude that any error of the district court in admitting the contested evidence, if error there was, was harmless even without the requested related instruction inasmuch as, in light of all these factors, we have "a fair assurance that the error did not substantially affect the verdict." *See United States v. Grinage*, 390 F.3d 746, 751 (2d Cir.2004) ("In the absence of a constitutional violation, the erroneous admission of evidence is subject to the harmless error test of Federal Rule of Criminal Procedure 52(a). *See Kotteakos*

*v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (a nonconstitutional error is harmless where an appellate court has a fair assurance that the error did not substantially affect the verdict).") Put otherwise, "it is highly probable that the error did not contribute to the verdict." *United States v. Colombo*, 909 F.2d 711, 713 (2d Cir.1990).

■ Finally, Ramirez–Zapata contends that the testimony of an FBI agent concerning the meaning and significance of the challenged documents was speculative and improper, and that the court should either have disallowed this testimony pursuant to Fed.R.Evid. 702, or cautioned the jury not to substitute the agent's opinions for its own judgment. Ramirez–Zapata concedes that he did not object to the testimony at trial or request a cautionary instruction. Accordingly, we have only "limited discretion" to correct "plain" errors of the district court that affect the defendant's "substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

As we have already noted, the documentary evidence about which the FBI agent testified represented a small component of a strong prosecution case. We have permitted the introduction of similar interpretive testimony by law enforcement officers in narcotics cases. *See, e.g., United States v. Quiroz*, 13 F.3d 505, 514 (2d Cir.1993). And while the district court here did not specifically instruct the jury not to place undue weight on the agent's testimony, it did issue a standard instruction concerning the evaluation of witnesses generally and admonished the jury that "[t]he testimony of a law enforcement officer is entitled to no special treatment or consideration." As a result, we conclude that there was no error in the district court's decision to admit the agent's testimony, much less a "plain" one. *See United States v. Rybicki*,

354 F.3d 124, 129 (2d Cir.2003) (en banc) (holding that if there is no error, *a fortiori*, there is no plain error), *cert. denied,* —— U.S. ——, 125 S.Ct. 32, 160 L.Ed.2d 10 (2004).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.