08-5151-cr
United States v. Jackson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2009

(Argued:  September 25, 2009    Decided:  October 27, 2009)

Docket No. 08-5151-cr

-----------------------------------------------------------X

UNITED STATES OF AMERICA,

Appellee,

- v. -

DURRELL WILLIAMS,

Defendant,

RORY JACKSON, also known as Roy Jackson,

Defendant-Appellant.

-----------------------------------------------------------X

Before:   McLAUGHLIN, KATZMANN, Circuit Judges, and KORMAN,
          District Judge.*

    We vacate the defendant's conviction for possession of a

firearm because the district court admitted evidence that the

defendant had been in an apartment from which weapons and drugs

were later recovered.  The evidence was not admitted for a proper

purpose, and the error was not harmless.

    VACATED AND REMANDED.

---

* The Honorable Edward R. Korman of the United States District
Court for the Eastern District of New York, sitting by
designation.

JUSTIN D. LERER, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, of counsel), for Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

DONALD YANELLA, New York, New York, for Defendant-Appellant.

McLAUGHLIN, Circuit Judge:

Rory Jackson appeals his conviction after trial in the United States District Court for the Eastern District of New York (Dearie, C.J.) for possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). We vacate the conviction because the district court improperly admitted evidence that Jackson had been present in an apartment where police later found a cache of weapons and other contraband.

**BACKGROUND**

On November 1, 2006, New York City police officers responded to a 911 call reporting a gunshot in an apartment building in Queens. The shot was fired from Apartment B36 on the third floor into Apartment B26 below. Police officers William Sommer and Jonathan Jordan arrived at the building shortly after the call and saw Durrell Williams, Rory Jackson, and Zanika Arnold outside. The officers identified themselves and asked the three to stop. Williams fled, and Officer Sommer pursued him.

As Sommer chased Williams, Officer Jordan approached Jackson and told him to show his hands. Jackson took a can of juice out

2

of his pocket, threw it at Jordan, and turned to flee.  As Jackson turned, Officer Jordan spotted what he believed to be the butt of a gun in Jackson's jacket pocket.  Jordan radioed a description of Jackson and chased him for approximately 50 to 100 feet before giving up the chase.

Officer Scott Ferrari arrived at the scene to help establish a police perimeter.  He saw Jackson exit a nearby building looking "disheveled" and wearing his pants inside-out.  Jackson refused Ferrari's and other officers' commands to stop and instead crouched behind a parked car.  Ferrari then apprehended Jackson at gunpoint.  Jordan arrived approximately 40 minutes later and identified Jackson.

Ferrari and other officers searched the area for the gun that Jordan believed he had seen in Jackson's pocket.  Ferrari found a gun in a garbage can in a courtyard between the locations where Jordan had chased Jackson and where Ferrari later apprehended Jackson.  There were no fingerprints on the gun.

The day after Jackson's arrest, New York City police officers executed a search warrant on Apartment B36, from which the shot had been fired.  Among other things, they found firearms, other weapons, bullet-proof vests, drugs, and cash.  Jackson was indicted in the Eastern District for violating 18 U.S.C. § 922(g)(1), which prohibits a person previously convicted

3

of a crime punishable by imprisonment for more than one year from possessing a firearm.

Jackson's trial was scheduled to begin on Monday, June 25, 2007. At approximately 11:15 p.m. on Sunday, June 24, the Government moved to admit evidence of the contraband that police recovered from Apartment B36. The Government proffered that "eye witness testimony" would establish that, shortly before the shot was fired, Jackson "was in possession of the items recovered from" Apartment B36:

> four loaded firearms, including a revolver with an attached laser pointer, two bullet proof vests, at least 150 rounds of live ammunition of various types, a metal knuckle knife and machete, quantities of cocaine and marihuana, empty ziplock bags, several scales and over $4,000 in United States currency.

The Government suggested two reasons for admissibility: (1) necessary background to the charged crime; and (2) to show Jackson's "opportunity, plan and lack of mistake in possessing" the gun.

The district court admitted the evidence, stating that "[y]our party is put in that apartment with that kind of armament moments before the shot occurs. It is prejudicial, but not unduly prejudicial. It is highly relevant."

During the trial, the Government called Zanika Arnold to testify, apparently as the "eye witness" who would establish Jackson's "possession" of the contraband in Apartment B36.

4

Arnold testified that, at about 9:20 p.m. on the night Jackson was arrested, she went to visit her boyfriend Durrell Williams at the third-floor Queens apartment in which he was staying. Although the record is unclear as to the apartment number, the Government argued to the jury during its closing statement that it was Apartment B36. When Arnold entered the building, she saw Jackson downstairs. Jackson escorted her upstairs to Apartment B36 so that she could use the bathroom. The Government offered nothing further to link Jackson to the apartment or, significantly, to the weapons and drugs found in it.

Testifying for the Government, Officer Jordan stated that he "saw what [he] thought was the butt of a black gun in [the] left [pocket]" of Jackson's black leather jacket. It was dark out, but a spotlight lit the area outside the building. On cross-examination, Jordan admitted that he was not sure that Jackson had a gun and that he did not see Jackson throw a gun away while running.

Through testimony from Jordan and Officer Philip Mathew, who helped execute the search warrant, the Government showed the jury four guns recovered from the apartment and a series of photographs depicting the weapons, cash, and drug paraphernalia found in Apartment B36. During Officer Jordan's testimony, the district court instructed the jury that the case "ha[d] nothing

to do with a narcotics charge," adding that the jury should not consider the evidence of drugs "for any reason whatsoever." The court explained that the jury was receiving the evidence merely because "these are the materials that were found in the apartment."

After the Government rested its case, Jackson moved for a judgment of acquittal. The district court denied the motion.

During its summation, the Government specifically focused on the contraband found in Apartment B36, telling the jury:

> [Y]ou heard a lot of evidence about things that were recovered in that apartment. You saw guns and you saw scales and a knife and things.
> And I want to remind you . . . the defendant is not charged with any of those things.
> The reason . . . the Government presented you with that evidence is just so that you know the whole story, that you know exactly what was going on that day . . . , and that <u>you know who the defendant really is</u> . . . . (Emphasis added.)

In the Government's rebuttal summation, it argued that Jackson had access to the apartment and that "drug dealers don't let you just walk into their apartments." According to the prosecutor, the fact that Jackson had access to the apartment allowed the jury "to make a reasonable conclusion about the defendant and whether he had a gun . . . that night."

The jury found Jackson guilty.

6

After trial, Jackson retained new counsel who sought reconsideration of the motion for acquittal and moved for a new trial. Jackson renewed his challenge to the admissibility of the evidence that weapons and drugs had been found in the apartment. He also contended that he had received ineffective assistance of counsel and that newly discovered evidence undermined the verdict.

In April 2008, the district court denied Jackson's motions. Carefully explaining its reasoning, the court remarked that "the critical part of this case, given the circumstantial nature of the specific charge, has to do with the contents of the apartment." The district court added, "I did not admit [the guns and photographs] as 404(b) evidence. . . ."

The district court subsequently sentenced Jackson to 60 months' imprisonment.

Jackson now appeals.

**DISCUSSION**

We conclude that Jackson's conviction must be vacated because the evidence recovered from Apartment B36 the day after his arrest was not admissible for any proper purpose. We also hold that admission of the evidence was not harmless error. We need not address Jackson's other challenges to his conviction and sentence.

## I.    Standard of Review

We review admissibility of evidence at trial for abuse of discretion.  United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009).

## II.    Background to the Crime

"To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Thus, evidence is often admissible "to provide background for the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged." United States v. Reifler, 446 F.3d 65, 91-92 (2d Cir. 2006) (internal quotation marks omitted).  We disagree that the contraband evidence was relevant as background to the crime.

The physical evidence from the apartment was not particularly helpful to explain the crime.  The Government's version of the facts was simple and complete: the police responded to a report of a shooting in the building; they approached a group of people outside the building; Jackson fled; Officer Jordan saw a gun in Jackson's pocket; the police later apprehended Jackson; and an officer found the gun near where Jackson had run.

The Government did not need the contraband to explain why the police were at the building, why Officer Jordan pursued Jackson, why Jackson was arrested, or why Jackson was charged with possessing a firearm.  Failing to detail the contents of the apartment would not have left any gaps in the Government's case, nor have left the jury wondering about missing pieces of the story.  Cf. Old Chief v. United States, 519 U.S. 172, 188-89 (1997) (holding that the prosecution is entitled to present a complete narrative of the crime that "satisf[ies] jurors' expectations about what proper proof should be").

We think the evidence more likely confused the jury than assisted its understanding of the case.  Indeed, the district court wisely interrupted Jordan's testimony about the photographs to explain that the case "ha[d] nothing to do with a narcotics charge," and admonished the jury not to consider the evidence of drugs "for any reason whatsoever."  A jury might fairly puzzle over how evidence that it should not consider "for any reason" is relevant to the issues it has to decide.

The Government's brief on appeal hardly seems convinced that the evidence was background to the crime.  The few sentences it devotes to that argument assert merely that the evidence completed the narrative and was "inextricably intertwined with proof of the charged offense" without any explanation as to why

9

this is so.  We are compelled to conclude that the district court abused its discretion in admitting the guns and photographs of the weapons, drugs, and related contraband as background evidence.

**III. Opportunity or Motive**

The Government asks us to affirm admission of the evidence on the alternative ground that, under Federal Rule of Evidence 404(b), it was relevant to prove that Jackson "had the opportunity and motive" to possess a gun.

Rule 404(b) renders inadmissible evidence "of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b). Under the Rule, however, a court may admit prior-act evidence to show, among other things, "proof of motive, opportunity, intent . . . or absence of mistake."  Id.  The Government's argument that the evidence was admissible under a Rule 404(b) analysis fails for at least two reasons.

First, whether Jackson had the opportunity or motive to possess a gun was not put in issue during the trial.  See Hynes v. Coughlin, 79 F.3d 285, 291-92 (2d Cir. 1996) (holding that a prior act was not admissible to show intent when intent was not contested at trial).  Jackson's defense was that there was simply insufficient evidence to prove that he possessed a gun at all,

10

not, for example, that he would have been unable to procure a gun or that he lacked a reason to have one.

Second, while the evidence that Jackson had ready and contemporaneous access to an apartment in which firearms were recovered constituted a relevant piece of circumstantial evidence tending to prove that he possessed the weapon at issue, the evidence offered at trial went far beyond what was necessary for this purpose. Its admission ignored a "common sense precaution which should clearly be taken . . . to limit the prosecutor's presentation to such facts . . . as are reasonably necessary to prove the point for which the evidence is admitted, and to exclude unsavory details which go beyond what is necessary to make the point." David W. Louisell & Christopher B. Mueller, Federal Evidence § 140, at 209 (rev. ed. 1985); see also United States v. Bradwell, 388 F.2d 619, 622 (2d Cir. 1968) (discussing the undue prejudice that can result when the "minute peg of relevancy [is] entirely obscured by the dirty linen hung upon it" (citation omitted)).

More significantly, during the trial the Government did not argue or even assert that Jackson had the opportunity or motive to possess a gun. Instead, it maintained that the contraband showed "exactly what was going on that day," adding delphically that it established "who the defendant really is." It also

11

suggested that the evidence allowed the jury "to make a reasonable conclusion about the defendant." Thus, the Government's only use of the evidence was to argue that it illuminated Jackson's character. Rule 404(b) prohibits such tactics. See Hynes, 79 F.3d at 292 (holding that despite defendants' "lip service to the proper principle" for admitting evidence under Rule 404(b), defendants actually used prior-act evidence to establish plaintiff's propensity for violence).

**IV. Harmless Error**

We might affirm Jackson's conviction if the district court's error were harmless. See Mercado, 573 F.3d at 141 ("[E]videntiary rulings are subject to harmless error analysis."). However, we cannot "conclude with fair assurance that the evidence did not substantially influence the jury." Id. (internal quotation marks omitted).

The Government's case was by no means overwhelming. The jury heard evidence of Jackson's flight, and Officer Jordan's testimony that, as Jackson was running from him at night (though with the aid of a spotlight), he saw what looked like a black gun handle protruding from Jackson's black leather jacket. Cross-examination established that Jordan was not sure that he saw a gun. Although the Government also proved that Officer Ferrari found a gun near where Jackson had run, the Government did not

12

recover any fingerprints from the gun, and no witnesses saw Jackson place the gun in the garbage can or even run past the garbage can.

We note that the district court believed that the evidence from the apartment was "critical" to the Government's case. Given the borderline evidence, there is a substantial risk that the jury was nudged from reasonable doubt to conviction by the suggestion that Jackson possessed, or associated with those who possessed, laser-scoped firearms, bullet-proof vests, machetes, and more mundane materials of the drug trade.

Finally, we do not believe that the district court's limiting instruction can salvage the conviction. The court instructed the jury essentially to ignore the evidence of drug dealing, noting that the evidence was admitted simply because "these are the materials that were found in the apartment." Although we ordinarily presume that the jury followed the court's instructions, "this presumption is dropped where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." United States v. Colombo, 909 F.2d 711, 715 (2d Cir. 1990) (internal quotation marks omitted). We find such probability and prejudice here.

The instruction was too general and vague to ensure that the error in admitting the evidence was harmless. "[I]t is imperative that [limiting] instructions be clear and unequivocal." United States v. Becker, 502 F.3d 122, 133 (2d Cir. 2007). The instruction did not expressly advert to the weapons found in the apartment, only to the drugs. Thus, the jury might have believed that the weapons found in the apartment could contribute to a finding that Jackson possessed the gun. See id. (holding that "a reasonable juror might have assumed that she was permitted to consider" evidence for a purpose not expressly prohibited by a limiting instruction).

Moreover, we have held that a jury will likely disregard an instruction that evidence is merely background in the face of "shocking" evidence that the Government puts at the center of the trial. See Colombo, 909 F.2d at 715. Although the evidence here may not have been as inflammatory as the rape and sodomy in Colombo, see id., it is likely that the jury could not have ignored the parade of guns and photographs that the Government put before it, which was a major focus of the prosecutor's closing arguments.

The evidence was also devastating to Jackson. Without this evidence, the Government's case was that Jackson was a convicted felon with a gun who ran from the police. With the evidence, the

14

Government invited the jury to infer that Jackson at least associated with dangerous drug dealers equipped with an array of weapons who operated a narcotics business out of a residential apartment building.  In light of such evidence, Jackson had little chance to prevail on his argument that he did not possess a single handgun.  Cf. United States v. Farmer, ___ F.3d ___, 2009 U.S. App. LEXIS 22157, at *39 (2d Cir. Oct. 8, 2009) (vacating attempted murder conviction where gratuitous references to defendant's nickname, "Murder," "short-circuited the jury's fact-finding" regarding a plausible defense).

Admitting the evidence cannot be viewed as harmless error. Accordingly, Jackson's conviction cannot stand.

**CONCLUSION**

For the foregoing reasons, we VACATE the judgment of conviction and REMAND for further proceedings consistent with this opinion.