NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4083
_____

UNITED STATES OF AMERICA

v.

RAFAEL CABRERA,
Appellant
_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-13-cr-00048-001)
District Judge: Honorable Mark R. Hornak
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 21, 2016

Before: FISHER, GREENAWAY, JR., and ROTH, *Circuit Judges*.

(Filed: August 17, 2016)

_____

OPINION*
_____

FISHER, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Rafael Cabrera appeals his conviction of conspiracy to possess with intent to distribute 100 grams or more of heroin. Cabrera also appeals his sentence of 288 months' imprisonment based on his conviction. We will affirm his conviction but vacate his sentence and remand to the district court for resentencing.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Cabrera was arrested on February 11, 2013, in Carlisle, Pennsylvania, with over 700 bricks of heroin. Those 700 bricks were intended for distribution to Avery Johnson. At the time the February 11 exchange was to take place, Johnson was working as a confidential informant for the FBI. Johnson became an informant after local law enforcement arrested him for heroin possession on January 10, 2013, in Pittsburgh, Pennsylvania. After his arrest, Johnson revealed he had purchased heroin from a man named "Rubio" five times between August 2012 and January 2013. The transactions usually occurred in Carlisle, and the quantities purchased increased with each transaction, with the final transaction involving 654 bricks of heroin.

After Johnson's arrest, FBI Special Agent Leonard Piccini, Jr. posed as Johnson and arranged a transaction to purchase heroin from Rubio. The FBI's investigation developed evidence that indicated Cabrera was Rubio. Cabrera, under the guise of Rubio, had Agent Piccini deposit $3,000 into a bank account listed under Cabrera's name. Cell phone tracking data ("ping data") indicated Rubio's concentrated presence at Cabrera's

2

home in Passaic, New Jersey. Further, stored location data in a global positioning system ("GPS") found in Cabrera's vehicle reported several locations where Johnson and Rubio met for transactions—in both Pittsburgh and Carlisle. Bank records in Cabrera's name showed that Johnson deposited thousands of dollars in Cabrera's account after the drug transactions.

Cabrera was indicted on federal drug charges in two districts. This appeal concerns Cabrera's March 2014 grand jury indictment in the Western District of Pennsylvania for conspiracy to possess with intent to distribute 100 grams or more of heroin from August 2012 to January 10, 2013, in violation of 21 U.S.C. § 846 and contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i). A grand jury separately indicted Cabrera, approximately ten months later, in the Middle District of Pennsylvania for heroin possession based on his February 11 arrest.

Because Cabrera was separately charged in the Middle and Western Districts, the heroin seized in Carlisle during Cabrera's February 11 arrest ("February 11 heroin"), was not part of the Western District indictment. That indictment spanned only August 2012 to January 10, 2013. Cabrera sought to have any reference to the February 11 heroin excluded from his trial in the Western District because he argued it did not support the charged conspiracy. Before trial, however, the district court denied that request.

At trial, Cabrera asserted that he was not "Rubio" and was simply a drug mule. In order to connect Johnson to Cabrera, the Government displayed photos and bags of the February 11 heroin. Concerned about these displays, the district court provided the jury with a limiting instruction before witness testimony and during the jury charge. Further,

3

on Cabrera's request, the district court limited the display of the February 11 heroin while the Government's witnesses were not testifying. The Government referenced the February 11 heroin during its closing statement. After closing statements, the evidence was submitted to the jury. Unbeknownst to either party, a sexually explicit thumbnail photograph that had been stored on Cabrera's phone, along with other, relevant photographs, was included in the exhibits reviewed by the jury.

Cabrera was convicted of conspiracy in the Western District, and his Middle District indictment was dismissed. During sentencing, Cabrera qualified for a sentence enhancement under the United States Sentencing Guidelines § 4B1.1 career offender provision due to his prior drug trafficking and two eluding convictions. The district court sentenced Cabrera to 288 months' imprisonment. After sentencing, Cabrera reviewed the trial records and realized that the sexually explicit thumbnail photograph had been submitted to the jury. Cabrera timely appealed his conviction and sentence.

II.

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We will review the district court's evidentiary findings for abuse of discretion, including rulings on Rule 404(b) evidence.[1] To the extent an evidentiary ruling is based on an interpretation of the Federal Rules of Evidence, our review is plenary.[2] If a trial error is unpreserved, however, we review for plain error.[3] Finally, we exercise plenary review over both the "[d]etermination of what constitutes a

---

[1] *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014).
[2] *Id.*
[3] *Johnson v. United States*, 520 U.S. 461, 466–67 (1997).

4

crime of violence under the sentencing guidelines and legal interpretations of the guidelines."[4]

### III.

Cabrera appeals his conviction on two grounds: the Government improperly presented the February 11 heroin evidence, and the sexually explicit photo was improperly submitted to the jury. Cabrera also appeals his sentence.

### A.

First, Cabrera argues that the Government's presentment of the February 11 heroin violated Rule 404(b). He asserts that, under Rule 403 (one of the 404(b) factors), how the Government presented the evidence confused the issues, caused unfair prejudice, and misled the jury.

Whether evidence of a "crime, wrong, or other act" is admissible under Rule 404(b) depends on four factors. The evidence "must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it."[5] The first factor requires the proponent to identify a proper purpose at issue that is consequential to the outcome.[6] Second, the proponent must "proffer a logical chain of inference consistent with its theory of the case[,]" and the district court must "articulate reasons why the evidence also goes to show something other than character."[7] Third,

---

[4] *United States v. Jones*, 740 F.3d 127, 132 (3d Cir. 2014).
[5] *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (citation omitted).
[6] *Caldwell*, 760 F.3d at 276.
[7] *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992).

evidence may be excluded when the probative value is substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury. "[A] large risk of unfair prejudice" is tolerated for "highly" probative evidence.[8] Finally, if the defendant requests, the district court should provide limiting jury instructions when the evidence is admitted.[9]

Here, Cabrera has not challenged the first or second factors. A review of the record shows that the Government explained that the February 11 heroin evidence concerned several proper purposes and was relevant to its case. The February 11 heroin evidence corroborated Johnson's testimony, supported the Government's contention that Cabrera was Rubio, and showed Cabrera's knowledge and intent to engage in the conspiracy. Further, the district court determined that the heroin evidence was relevant to show that Cabrera's conduct leading to his arrest was a continuation of prior transactions with Johnson. Therefore, the first and second factors were satisfied.

Cabrera focuses on the Government's conduct under the third factor, the risk of prejudice under Rule 403. Cabrera argues that the Government's presentation of thousands of heroin packets to the jury and excessive witness testimony about the February 11 heroin evidence was unfairly prejudicial. Cabrera argues we should be guided by *United States v. Williams*[10] and *United States v. Zabaneh*.[11]

A close reading of both cases reveals that they are distinguishable. In *Williams*, the Second Circuit vacated the defendant's conviction because the government told the jury

---

[8] *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).
[9] *Caldwell*, 760 F.3d at 277.
[10] 585 F.3d 703 (2d Cir. 2009).
[11] 837 F.2d 1249 (5th Cir. 1988).

the other acts evidence, which only a single witness linked to the defendant, established the defendant's true character. The Fifth Circuit, in *Zabaneh*, vacated a defendant's conviction because the district court did not weigh the probative value of the other acts evidence against its unfair prejudice, and the district court informed the jury why the evidence was relevant to the charge only after the Government presented its case.

Here, the Government had the burden of proving Cabrera's identity because Cabrera argued he was not Rubio and was not involved in the conspiracy. As a result, the Government presented the February 11 heroin evidence to identify Cabrera as Rubio and to corroborate Johnson's testimony—both central issues. Further, the Government presented strong evidence against Cabrera, including text communications, bank records, ping data, and expert testimony. Finally, after Cabrera objected, the district court limited the jury's view and the Government's display of photos of the February 11 heroin. Therefore, the February 11 heroin evidence's probative value was not substantially outweighed by misleading the jury, confusing the issues, or causing Cabrera unfair prejudice.

Lastly, Cabrera asserts the jury's conviction is uncertain because the district court's jury instructions about the February 11 heroin evidence were unclear and did not clarify the Government's convoluted closing statement. The record reveals that on two occasions the district court requested Cabrera to submit proposed limiting instructions for the jury, which allowed him a full opportunity to provide clarity. The district court also provided the jury limiting instructions before the Government presented the February 11

heroin and again during the jury charge. A review of those instructions establishes that they were thorough and unambiguous.

Thus, the district court did not err when it admitted the February 11 heroin because the Rule 404(b) factors were met.

## B.

Next, Cabrera asserts that the sexually explicit photograph submitted to the jury for deliberation affected his substantial rights. Cabrera did not object to the introduction of this photograph into evidence.

Before we can remedy an unpreserved trial error, there must be an error, that is plain, and that affects the defendant's substantial rights.[12] When the three conditions are met, we exercise discretion to remedy an error "only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[13] Under plain error review, a defendant raising an unpreserved issue cannot have "intentionally relinquished or abandoned" the error, and the error "must be clear or obvious, rather than subject to reasonable dispute."[14] The Government acknowledges that submitting the explicit photo meets the first and second prongs. We agree.

The parties, however, disagree about whether the photo affected Cabrera's substantial rights. Cabrera asserts the photo's explicit nature caused the jury discomfort that wrongly led to his conviction. The Government claims the small thumbnail photo

---

[12] *Johnson*, 520 U.S. at 466–67.

[13] *Id.* at 467 (second alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[14] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted).

was a minor part of the evidence and was disregarded by the jury because it was irrelevant.

An error affects a defendant's substantial rights when it "'affected the outcome of the district court proceedings.'"[15] Although we are sensitive to the potential prejudice against Cabrera, we do not find the photo affected his substantial rights. The Government presented considerable evidence to prove the conspiracy, including Cabrera's bank records and bank registration, which showed Johnson deposited money into Cabrera's account; Cabrera's GPS, which contained Johnson's home address and locations where the transactions occurred; and Rubio's cell phone ping data, which was centered around Cabrera's home.

Thus, although submitting the explicit photo to the jury was error, the error did not affect Cabrera's substantial rights because the outcome of the proceedings was not affected. His conviction is therefore affirmed.

C.

Finally, Cabrera asserts he should not have been sentenced as a career offender under the Guidelines in light of recent Supreme Court precedent. The Government concedes Cabrera should not have been sentenced as a career offender and remand is appropriate. We agree.

After Cabrera was sentenced in 2014, the Supreme Court decided *Johnson v. United States*,[16] which held that the Armed Career Criminal Act's ("ACCA") residual

---

[15] *Id.* (quoting *Olano*, 507 U.S. at 734).
[16] 135 S. Ct. 2551 (2015).

9

clause was unconstitutionally vague. Although *Johnson* did not address the constitutionality of the Guidelines' career offender provision, the language of the residual clause in the ACCA and in the Guidelines is identical. Due to this identical language, we have determined that the "'authority interpreting one is generally applied to the other.'"[17] Because of this determination, we recently applied *Johnson*'s holding to § 4B1.2(a)(2)'s residual clause.[18]     Cabrera's two convictions for eluding are crimes of violence under § 4B1.2(a)(2)'s residual clause because eluding is not one of the enumerated crimes of violence under the Guidelines.[19] Therefore, if we apply *Johnson* here, because two of Cabrera's predicate offenses no longer qualify under § 4B1.2's residual clause and Cabrera's 288 months' sentence was imposed in order to "amplify in a substantial way the sentence . . . as a consequence of [Cabrera] being a career offender,"[20] the district court committed plain error at the sentencing phase.[21] Thus, resentencing is appropriate.

IV.

For the reasons set forth above, we will affirm Cabrera's conviction but vacate his sentence and remand to the district court for resentencing.

[17] *United States v. Calabretta*, -- F.3d --, No. 14-3969 at *4 (3d Cir. 2016) (quoting *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009)).
[18] *Id.* at *7.
[19] U.S.S.G. § 4B1.2 ("The term 'crime of violence' means any offense . . . that − (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.").
[20] A. 920–21.
[21] *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016) (if the record shows that the district court relied on an erroneous Guidelines range in determining an appropriate sentence, it has committed plain error).