**UNITED STATES of America,**
**Appellee,**

v.

**Brian D. SHERRY, also known as Colonel Sherry, also known as Major Sherry, also known as Sir Brian Sherry, also known as Prince Brian, also known as Brian Sherry–Berwick, George R. Englert, also known as Dr. Moncrieffe, also known as Baron Moncrieffe, also known as Prince George, Cesar A. Viana and Cristopher Berwick, Defendants–Appellants.**

Nos. 03–1166(L), 03–1219(CON), 03–1237(CON), 03–1318(CON), 03–1330(CON).

United States Court of Appeals, Second Circuit.

Aug. 17, 2004.

See also, 372 F.3d 75.

Mark P. Goodman (Debevoise & Plimpton LLP), New York, NY, for Appellant Englert.

Brian Sheppard, New York, NY, for Appellant Viana.

Richard Willstatter, New York, NY, for Appellant Berwick.

Alexander H. Southwell, Adam B. Siegel, Assistant United States Attorneys (David N. Kelley, United States Attorney, Southern District of New York), New York, NY, for Appellee.

Present: OAKES, B.D. PARKER, Circuit Judges, and KORMAN, District Judge.[1]

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED

George R. Englert, Cesar A. Viana, and Cristopher Berwick appeal from judgments of conviction in the United States District Court for the Southern District of New York (Scheindlin, *J.*), following Englert's guilty plea and a three-week jury trial of Viana and Berwick. The prosecution related to their participation in an elaborate fraud conspiracy centered around the operation of a fictitious financial institution known as the Badische Trust (the "Trust").[2] Familiarity with the operations of the Trust, as adduced at trial, as well as the roles that Appellants were found to have played in the Trust is assumed.

Englert pled guilty before trial and challenges on appeal the District Court's application of a sentence enhancement for obstruction of justice, and its refusal to apply an offense level reduction for acceptance of responsibility. Viana and Berwick both challenge the admission of Englert's plea

allocution into evidence, and contest, respectively, the District Court's refusal to apply a downward departure from the sentencing guidelines for rehabilitation, and the Court's refusal to declare a mistrial on account of the government's release to the press of trial exhibits on the eve of jury deliberations. We addressed Englert's appeal in a separate opinion, *see United States v. Khimchiachvili*, 372 F.3d 75 (2d Cir.2004), and conclude that Appellants' remaining arguments have no merit. Thus, we affirm convictions of Berwick and Viana.

## I. Admission of Englert's Plea Allocution

■ At the close of the government's case in Berwick's and Viana's trial, the government introduced portions of Englert's plea allocution for the purpose of establishing the existence of the fraud conspiracy. In relevant part, the allocution contained a statement by Englert that, pursuant to his involvement with the Trust, he "agreed *with several other people* to engage in a scheme to falsely represent the clients of the Badische Trust, that the trust could and would engage in complex funding transactions on behalf of these clients." The government concedes that in light of the Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) (holding that the Confrontation Clause of the Sixth Amendment requires "testimonial evidence," such as statements elicited in a plea allocution, to have been submitted to cross-examination before they can be admissible due to a witness's unavailability), it was error for the Court to admit Englert's plea allocution. Thus,

1. Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

2. Brian D. Sherry filed a notice of appeal from his judgment of conviction rendered in the same trial, but voluntarily withdrew that appeal on August 4, 2003.

we review the admission for harmless error, determining whether it was "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967);[3] *see also United States v. Jean–Baptiste*, 166 F.3d 102, 108 (2d Cir.1999) (constitutionally erroneous admission of evidence is harmless if the court "can conclude with fair assurance that the evidence did not substantially influence the jury" and if it is "highly probable that the error did not contribute to the verdict" (internal quotation marks omitted)).

In determining whether a Confrontation Clause violation is harmless, we weigh various factors, including principally:

> [I] whether the government's case against the defendant was strong; [ii] whether the evidence in question bears on an issue that is plainly critical to the jury's decision ...; [iii] whether the evidence was emphasized in the government's presentation of its case and in its arguments to the jury; and [iv] whether the case was close.

*United States v. Dhinsa*, 243 F.3d 635, 649–650 (2d Cir.2001) (quoting *Jean–Baptiste*, 166 F.3d at 108–09 (internal quotation marks and citations omitted)). Among these factors, "[t]he strength of the government's case against the defendant is probably the most critical ... in determining whether an error affected the verdict," *United States v. Colombo*, 909 F.2d 711, 714 (2d Cir.1990). Accordingly, a reviewing court will often find that the admission of evidence was harmless "where there is sufficient corroborating evidence to support the conviction," although it should not do so "in a close case, since in such a case even the smallest error may have been enough to tilt the balance." *Colombo*, 909 F.2d at 714. This case, we believe, is not a close case.

Viana and Berwick contend that the inclusion of the words "several other people" in the excerpted portion of the allocution admitted at their trial was not necessary to establish that Englert participated in a conspiracy—he needed only admit to having agreed with at least one other person—and permitted the jury "to determine the number of people involved in the conspiracy, and then to use other evidence to determine whether Viana [or Berwick] was involved," notwithstanding a jury instruction to the effect that there was "nothing in Mr. Englert's statement that proves" Viana's and Berwick's "member[ship]" in the conspiracy. Even if these contentions were true, however, we find the evidence of their guilt overwhelming such that the error did not contribute, beyond a reasonable doubt, to their conviction.

At trial the government showed that Viana, acting as a "liaison" between victims and the Trust, made misrepresentations regarding the current projects on which he was working for the Trust; his length of experience with the Trust; the nature of the transactions on which he had worked; and the success in obtaining funding enjoyed by prior clients of the Trust with whom he had worked.[4] More impor-

---

**3.** The government contends that since "Berwick did not object to the admission of Englert's allocution, but simply requested an alternative limiting instruction," his appeal from the District Court's admission of Englert's allocution is reviewable only for "plain error." *See* Fed.R.Crim.P. 52(b). Whatever the merits of this argument, since we find that the convictions should stand under the more exacting "harmless error" standard, we need not reach the issue.

**4.** Other of Viana's alleged misrepresentations to the Trust's victims included statements about the Trust's history, the Trust's composition and its source of assets, and assurances

tantly, the evidence suggests that Viana induced victims to seek larger amounts of financing (resulting in larger performance guarantees and personal fees for himself), directed one victim in particular to deposit a performance guarantee in Viana's own account after the existence of an investigation became known, and both shared a bank account with, and provided access to a corporate credit account to, Sherry—a Trust principal who has not appealed his conviction.

For his part, Berwick allegedly misrepresented his length of experience with the Trust and his first-hand observation of the Trust's successful transactions. More importantly, he played a role in inducing victims to pay their performance guarantees, even offering to lower the advance fee without approval from the Trust principals when one victim balked at the amount, and participated in a conference call with a bank on behalf of the Trust to confirm certain aspects about the transaction (when the bank was approached by a victim seeking to establish the required offshore account). In other words, the conduct of Viana and Berwick adduced at trial unequivocally evinced something more than a mere arms-length, innocent business relationship between the Defendants and the Trust; rather, it revealed the Defendants' involvement in the Trust's operations on a scale that simply would not permit an inference that they were unaware of the fraud being perpetrated. We find, therefore, that the admission of Englert's plea, in which he admitted to "agree[ing] with several other people," as opposed to a more innocuous "one or more other persons," was harmless error.

## II. Release of Trial Exhibits to the Press

■ Berwick challenges the propriety of the government's release of certain trial exhibits—including a picture of Berwick, Sherry, Englert, and Robert Khimchiachvili in formal dress—to the press following the parties' summations, and claims that the District Court should have granted a mistrial because of the publicity engendered by the release. The picture appeared alongside an article in the *New York Post* the following morning—the first day of jury deliberations—entitled "Con Job 'Kingdom'; Ex–GI on trial in $50B fantasy-nation scam." The paper made it into the jury room that morning, whereupon it was turned over to the Court, but not after four jurors and one alternate viewed (but did not read) the article. We see no need to disturb Berwick's conviction on the basis of the jurors' brief exposure to the *Post* article.

The Court, upon discovering the presence of the newspaper in the jury room, questioned the jury about their exposure to the story. After determining that none of the five jurors who admitted to viewing the article actually read it, and particularly since the photograph in question was already in evidence, the Court concluded that there was no "jury taint issue", and the jury was charged and sent to deliberate. The following morning, per Defendants' request, the Court conducted individual voir dire of the jurors who indicated that they had seen the article, and asked the remaining jurors again if they had seen the article, concluding that "there has surely been no prejudice" as a result of the newspaper story.

District Courts have substantial discretion in addressing claims that jurors were exposed to extra-judicial information, including prejudicial publicity, *see United States v. An–Lo*, 851 F.2d 547, 558 (2d Cir.1988), and we review their denials of motions for a mistrial for abuse of discretion. *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir.1995). We see no rea-

that the transactions at issue were common in Europe.

son to disturb the lower court's decision. The Court adhered faithfully to the "three-step process" for determining whether prejudicial publicity requires a mistrial that we articulated in *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir.1987) (court must first "determine whether the coverage has a potential for unfair prejudice," ascertain whether any members of the jury "have learned of the potentially prejudicial publicity," and finally examine individually exposed jurors to explore the extent of the exposure and its effect on that juror's ability to decide the case fairly),[5] and thus are in no position to contest its findings that no prejudice resulted from the publicity.

■ Berwick's other argument—that the release of trial exhibits to the press constituted an attempt on the part of the government to distort jury deliberations, and thus violated Berwick's due process rights—is without merit. We have held that "[i]f a prosecutor abuses her discretion by intentionally attempting to distort the fact-finding process, then a due process violation exists." *United States v. Eisen*, 974 F.2d 246, 266 (2d Cir.1992). Rule 23.1(c) of the Local Criminal Rules for the Southern District of New York, which Berwick claims was violated, permits a lawyer to "quote from or refer without comment to public records of the court in the case," which is precisely what happened here. Otherwise, there is simply no evidence that the government's response to a press inquiry for certain trial exhibits was an intentional distortion of the fact-finding process, especially when Judge Scheindlin had previously instructed jurors not to read press accounts of the trial. Indeed, if a request had been made

to the District Court for the release of trial exhibits, it could not have been turned down. *See In re Application of Nat'l Broad, Co., Inc.*, 635 F.2d 945, 952–53 (2d Cir.1980). There was no due process violation.

## III. Refusal to Grant Viana a Downward Departure for Rehabilitation

■ Viana sought a downward departure based on his post-offense rehabilitation, which consisted of post-arrest volunteer work and therapy and counseling for substance abuse and other problems. He also sought a departure on the basis of a combination of factors, where even if each, individually, would not warrant departure, together they painted the defendant in a more sympathetic light and thus warranted consideration. The Court denied these requests, on the ground that Viana's rehabilitation efforts were not extraordinary enough, and the combination of factors was not exceptional enough, to warrant a departure in either case. We affirm.

We review the sentencing court's discretionary decision not to depart downwardly only if that decision was based on a mistaken determination that it lacked authority to do so, which determination is reviewed de novo. *United States v. Core*, 125 F.3d 74, 76 (2d Cir.1997). Viana contends that the District Court misunderstood its authority to downwardly depart because it "labored under legal misconceptions" that the rehabilitation must solely benefit society and that a defendant must start from a low position in life in order to qualify for a departure. We disagree. Here, the District Court refused to find that Viana's rehabilitative efforts were "extraordinary," and thus meritorious of a

---

**5.** We agree with the government that the "objective test" for determining prejudice articulated in *Manley v. Ambase Corp.*, 337 F.3d 237, 251–52 (2d Cir.2003) (instructing that prejudice should be determined by the nature of the information or contact at issue, and its probable effect on a hypothetical average jury), is not applicable when the publicity arises *during* trial.

downward departure for two reasons: first, that they benefited himself as well as society, and were therefore merely "admirable"; and second, that they were undertaken from a "starting place" of "reasonable middle-class circumstances and . . . a good education" and "a supportive family and . . . several good jobs." *See United States v. Herman,* 172 F.3d 205, 208 (2d Cir.1999). At no point did Judge Sheindlin ever intimate that she felt that, under the circumstances presented, she *lacked* authority to downwardly depart. Moreover, given the existence in the case law of support for the proposition that a defendant's "starting place" can impact the determination of whether his rehabilitation was extraordinary, *see, e.g., United States v. Middleton,* 325 F.3d 386, 389 (2d Cir. 2003) ("A downward departure based on post-sentencing rehabilitation is only available when a defendant's rehabilitation, compared to his or her 'starting point,' is sufficiently extraordinary to take the defendant out of the heartland of cases contemplated by the Sentencing Commission in formulating the Guidelines.") (quoting *United States v. Bryson,* 163 F.3d 742, 748–749 (2d Cir.1998)), we see no reason to dispute Judge Scheindlin's assessment.

\*　　\*　　\*　　\*　　\*　　\*

We have considered all of Viana's and Berwick's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgments of conviction against them.

However, the mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* No. 04–104, and *United States v. Fanfan,* No. 04–105 (to be argued October 4, 2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address Berwick's and Viana's sentences until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until fourteen days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*