NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0382n.06

No. 10-4412

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 09, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| AHMAD JALLAD, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE:    COLE and McKEAGUE, Circuit Judges; and ZATKOFF, District Judge.[*]

**McKeague, Circuit Judge.** Defendant-Appellant Ahmad Jallad pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. He appeals his sentence, arguing that the district court violated Fed. R. Crim. P. 32(i)(3)(B) by failing to make a finding on contested issues of fact and erred in applying a two-level enhancement for obstructing justice under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. We affirm.

## I. BACKGROUND

While working as a manager at a convenience store, Jallad purchased items stolen by professional shoplifters ("boosters") from drug store chains, such as Rite Aid and Walgreens, at heavily discounted prices. He would then stock the shelves of the store with these items. In April

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

2004, Jallad opened an eBay account and began selling the stolen items online, using the U.S. Mail to ship the items to purchasers. He was paid by electronic transfer via PayPal or by check or money order sent to his home. Jallad operated this scheme from April 2004 until he was arrested on February 17, 2009. PayPal records reflect that $632,000 gross proceeds were deposited into Jallad's account from April 2004 through November 2008.[1]

At his arraignment, Jallad executed a financial affidavit to qualify for appointed counsel under the Criminal Justice Act ("CJA"). He indicated on the affidavit that he was not employed, had not received any income in the past 12 months from a business, profession, form of self-employment, or other sources, and had $90 cash on hand. A federal public defender was appointed for him at the arraignment but was replaced with retained counsel nine days later. Jallad was indicted on one count of mail fraud on March 5, 2009 and entered a guilty plea on August 11, 2009.

The plea agreement advised that the government intended to offer evidence that Jallad knowingly submitted a false financial affidavit at his arraignment and that, based on this conduct, the government would seek a two-level sentencing enhancement for obstructing justice pursuant to U.S.S.G. § 3C1.1. The government agreed that Jallad could object to such evidence and otherwise contest the government's request for the enhancement. The government also agreed to recommend a two-level sentencing reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and an additional one-level reduction pursuant to § 3E1.1(b) for timely notifying authorities of his

---

[1]The government did not obtain PayPal records for the period from December 2008 through February 2009. Jallad ultimately pleaded guilty to receiving approximately $664,000 from the sale of stolen items.

intention to plead guilty. At his plea hearing, Jallad indicated that he read and understood the plea agreement and signed it voluntarily.

A Presentence Investigation Report ("PSR") was prepared consistent with the plea agreement. The PSR found that Jallad's representations on the financial affidavit—that he was not employed and had not received any income in the past 12 months—were false "because the defendant operated his eBay sales business up to the day of his arrest and had net profits of approximately $80,000 in the prior twelve months." This information was provided by the government. The PSR recommended both the two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 and three-level acceptance of responsibility reduction pursuant to § 3E1.1(a)-(b), for a total adjusted offense level of 20. Based on this total offense level and a criminal history category of I, the advisory guideline range was 33 to 41 months. Jallad did not file any written objections to the PSR.

The parties met for sentencing on March 15, 2010, but the court postponed the hearing in order to determine the whereabouts of the money Jallad made over the five-year period of his offense. Jallad agreed to take a polygraph examination. He had previously told postal inspectors and the probation officer that he had spent all the proceeds and had never given any money to relatives. During the pre-test portion of the polygraph exam, he admitted that he gave $20,000 to his sister; $9,000 to his cousin; and $2,000 to a friend. The polygraph examiner concluded that Jallad was being truthful, that he did not give any of the illegal proceeds to anyone else, and that he was not trying to hide any illegal assets from the government.

The parties met for sentencing again on July 26, 2010. Through counsel, Jallad stated that he had reviewed his PSR and had no objections. The court then expressed its reservations over whether Jallad merited an acceptance of responsibility reduction. It stated, "What is an issue, though, is whether the defendant, in light of his conduct in terms of making a false statement and financial affidavit to the magistrate and his having made apparently inconsistent if not false statements about having disbursed some of the proceeds would justify withholding the acceptance of responsibility credit." R. 41, Sentencing Tr. II, at 5. The court also indicated that it had not yet made a finding on the obstruction of justice enhancement. Upon defense counsel's request, the court granted a continuance.

The parties met for the third and final time for sentencing on October 18, 2010. Again, Jallad stated that he had reviewed the PSR with his attorney and had no objections. At this hearing, the discussion centered around whether Jallad merited a reduction for acceptance of responsibility, his proper criminal history category, and the 18 U.S.C. § 3553(a) sentencing factors. The district court expressed concerns about granting the acceptance of responsibility reduction because Jallad had initially lied to the probation officer about what he had done with the proceeds from the stolen goods. In expressing its concerns, the court mentioned the obstruction of justice enhancement as a matter already decided: "[Jallad] was not forthright with [the probation officer], just as he was not forthright with the magistrate when he appeared and filled out the CJA form, as to which two points have already been added for obstruction of justice." R. 42, Sentencing Tr. III, at 5. The government supported the acceptance of responsibility reduction, describing Jallad's cooperation in all other respects, but stated that it shared the court's concerns and pointed out that "[t]hat's why we reserved

the right to request—and the probation office has agreed—the upward adjustment for obstruction

of justice for lying on the form[.]" *Id*. at 8-9. The court then concluded that it was "content to giving

acceptance of responsibility credit" and "that would result in a base offense level of 20[.]" *Id*. at

10-11. Defense counsel confirmed that he had no objection to such finding.

The court then discussed its concerns that Jallad's criminal history category of I was

"substantially inadequate and understated." *Id.* at 11. The government responded it believed the

court's concerns on this point related to the § 3553(a) factors that guide the court's sentencing

determination once the advisory guidelines are set, rather than to the Defendant's criminal history

category. When defense counsel was given an opportunity to address the issues, counsel stressed

that he did not believe there should be an increase in the criminal history and that the court should

adhere to the low end of the guidelines. The court interrupted to confirm that the sentencing

recommendation was a "base offense level of 20, criminal history category of I, guideline range [of]

33 to 41 months," which the probation officer confirmed. *Id*. at 18. Defense counsel then argued

that the § 3553(a) factors favored a low-end-of-guidelines sentence. And the end of his argument,

defense counsel addressed the financial affidavit:

> MR WINGATE [for Jallad]: And the only other thing I think that we would need to
> address is the Court's understanding, the representation I have, I believe that it is, is
> the Court talked about the form that he filled out relative to -- and if I'm not
> mistaken, the form specifically, the question that asked had to do with two: one was
> are you now employed, which he checked no; and the other one was have you
> received in the past 12 months any income from a business, profession, or other form
> of self-employment or in the form of rent payments, dividends, retirement, or
> annuity; and that was checked no also. I would indicate to the Court -- and the Court
> has paperwork, as far as representation of conversations with Mr. Jallad. And I too
> have had numerous conversations with him specifically about, you know, were you
> employed when you signed this paperwork? And at that time the answer was, no. He

said that, I was no longer employed at the carryout. But then the question became, Well, you're selling is [sic] stuff on eBay. Does that constitute employment? And I guess if you look at it from one perspective you would say, yes, that would constitute employment. But again, by the same token, if I'm selling drugs, I don't have a legitimate job, but if you ask me, am I employed, I would have to say no.

THE COURT: You're getting an income. There's money coming in.

MR. WINGATE: I understand. But that sort of dovetailed into the second question. Then the second question being, Do you have any income? And the Court's question, of course, all right, I'm selling drugs; is it now incumbent upon me to tell the Court I have an income that is coming from my illegal enterprise? And I think that would, in fact, be the client's right to say no or refuse to answer that because it could be somewhat incriminating inasmuch as you're saying --

THE OURT: Well, you don't -- I'm not sure you want to go there because he didn't have to ask for court appointed counsel.

MR. WINGATE: I understand that.

THE COURT: That's what triggers it. So I see your quasi Fifth Amendment argument. I don't know the answer. I'm sure there's cases out there that could tell us one way or another. But again, it appeared that he had the resources available to retain counsel. He elected not to. So let's maybe move away from that.

MR. WINGATE: But just for that last point, Your Honor, that being Mr. Jallad did not, in fact, retain counsel. It was his parents that came in from Jordan who actually came in from Jordan and contacted me, and that is who retained me to represent him. In and of itself he did not have income to retain counsel, as the Court can see and pursuant to the polygraph that was gone. There was no income. I can only say to the Court that I'm hoping that this sheds some light on the questions and concerns that the Court has.

THE COURT: It does.

MR. WINGATE: It may not completely answer it or may not satisfy it --

THE COURT: It moderates it very substantially.

MR. WINGATE: I hope that it does. Again, on behalf of Mr. Jallad, I respectfully ask the Court to follow the recommendations of the government.

*Id.* at 23-25.

After Defendant's allocution, defense counsel made closing comments during which he again urged the court to follow the government's recommendation. The court concluded that it would remain within the guideline range and imposed the maximum 41 months imprisonment. This was the maximum under the guideline range recommended by the PSR and included the obstruction of justice enhancement. At the end of sentencing, the court asked, pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), whether the parties had any objections not previously made, to which defense counsel answered, "[n]othing further." *Id*. at 32-33.

Jallad appeals, arguing that (1) the district court violated Fed. R. Crim. P. 32 by failing to make fact findings on disputed issues and (2) misstatements in a financial affidavit executed for the purpose of receiving appointed counsel do not constitute an obstruction of justice under U.S.S.G. § 3C1.1.

## II.  ANALYSIS

**A.  Standards of Review**

"When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact de novo." *United States v. Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012). "Whether the facts found warrant the application of a particular guideline provision is a legal question reviewed de novo." *United States v. Corp*, 668 F.3d 379, 386 (6th Cir. 2012). Whether the district court complied with the procedural requirements of Federal Rule of Criminal Procedure 32(i) is also reviewed de novo. *United States v. White*, 492 F.3d 380, 414 (6th Cir. 2007).

"If a defendant fails to raise an objection before the district court, however, our review is only for plain error." *Corp*, 668 F.3d at 386; Fed. R. Crim. P 52(b). Under plain error review, the Defendant must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner,* 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

**B. Rule 32**

Because Jallad did not object to the court's failure to make specific findings pursuant to Rule 32, even after given an opportunity to do so, we review for plain error. *Vonner,* 516 F.3d at 385 ("If a sentencing judge asks [the *Bostic* question] and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court.").

Fed. R. Crim. P. 32(i)(3)(B)[2] provides that at sentencing, the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." "As a threshold matter, the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises." *White*, 492 F.3d at 415; *see also United States v. Hurst*, 228 F.3d 751, 760-61 (6th Cir. 2000). Once a dispute is raised, "Rule 32 'prohibits a court . . . from adopting the factual findings of the presentence report

---

[2]Formerly Fed. R. Crim. P. 32(c)(3)(D) until 1994 and then Rule 32(c)(1) until 2002. Neither change has altered this Court's substantive interpretation of the rule. *See United States v. Tackett*, 113 F.3d 603, 613 n.8 (6th Cir. 1997); *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003).

without making factual determinations of its own.'" *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quoting *United States v. Parrott*, 148 F.3d 629, 633 (6th Cir. 1998)). We require "literal compliance" with the Rule, and"[i]f a sentencing court fails to make the necessary factual findings, then we must remand for resentencing." *United States v. Middleton*, 246 F.3d 825, 847 (6th Cir. 2001).

Jallad contends that he sufficiently raised an objection to the obstruction enhancement, triggering the court's duty to make findings of fact, when he disputed the PSR's conclusions that his fraudulent scheme constituted employment and that he had income in the 12 months preceding his signing the financial affidavit. His argument, however, is belied by the record.

Under Rule 32(f), parties must state in writing any objections to the PSR within 14 days of receiving it. The probation officer may consider any objections and revise the PSR if appropriate. Fed. R. Crim. P. 32(f)(3). At least seven days before sentencing, the probation officer must submit to the court and parties the PSR and an addendum containing any unresolved objections. Fed. R. Crim. P. 32(g). Still, a party may make a new objection at any time before sentence is imposed, which the court "may, for good cause, allow[.]" Fed. R. Crim. P. 32(i)(1)(D). Any undisputed portion of the PSR may be accepted as a finding of fact by the sentencing court. Fed. R. Crim. P. 32(i)(3)(A).

Despite these numerous opportunities to make an objection known, Jallad disregarded them all. Jallad filed no written objections to the PSR. He twice affirmed before the district court that he had reviewed the PSR and had no objections. He did not object to the court's finding that the proper base offense level was 20, which was the level recommended by the PSR and included the

obstruction enhancement. And he repeatedly urged the court to follow the recommendations of the government, one of which was application of the enhancement as indicated clearly in both the PSR and plea agreement. On this record, we can hardly find that the obstruction enhancement was "in dispute"; rather, Jallad gave every indication to the court that it was not.

Jallad nonetheless contends that his dialogue with the court at the end of the third hearing sufficiently controverted the matter to trigger Rule 32. We disagree. Though he did bring up the financial affidavit at the end of the third hearing, he did not refer to the relevant guideline or otherwise make clear he was disputing the enhancement. *See United States v. Caballero,* 417 F. App'x 500, 504-05 (6th Cir. 2011) (finding no objection to the PSR where defendant made casual reference to "low participation" and neither cited the relevant guideline for a minor role adjustment nor developed any meaningful argument). Rather, it seems he was simply explaining his behavior in an attempt to assuage the court's concerns regarding the acceptance of responsibility reduction and his criminal history category, which, in addition to the § 3553(a) sentencing factors, were the only topics of discussion during the hearing. Regardless of Jallad's intention, however, the fact remains that he did not make any dispute clear. Given that Jallad repeatedly led the court to believe he had no objection to the obstruction enhancement, his reference to the affidavit at the end of a hearing that focused only on other sentencing factors, without any attendant notice of a new objection, did not sufficiently raise a dispute triggering Rule 32(i)(3)(B)'s procedural requirements. *See White*, 492 F.3d at 415 ("As a threshold matter, the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises."); *United States v. Hooker*, No. 09-2286, 2012 WL 171396, at *2 (6th Cir. Jan. 23, 2012) ("We cannot fault the district

court for not ruling on objections never raised before it."). We find no error, much less one that is plain, for the district court's failure to comply with an obligation that was never incumbent upon it.

## C. Obstruction of Justice

Jallad also contests the merits of the obstruction of justice enhancement. As he did not raise the argument below, we review for plain error.

Section 3C1.1 of the U.S. Sentencing Guidelines provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2008).[3] The application notes give examples of covered conduct, one of which is "providing materially false information to a judge or magistrate." § 3C1.1 cmt. 4(f). Materially false information is information "that, if believed, would tend to influence or affect the issue under determination." § 3C1.1 cmt. 6.

A circuit split exists on the question of whether this enhancement applies to false statements given for the purpose of obtaining appointed counsel. The disagreement is centered on the showing of intent necessary to apply the enhancement. *Compare United States v. Ruff*, 79 F.3d 123 (11th Cir. 1996) (finding the enhancement applied to defendant's statements given for the purpose of obtaining appointed counsel because such statements were deliberately false and tended to influence or affect the issue under determination, i.e. the appointment of counsel), *and United States v.*

---

[3]Jallad's PSR relied upon the Sentencing Guidelines effective November 1, 2008.

*Hernandez-Ramirez*, 254 F.3d 841 (9th Cir. 2001) (finding enhancement applied to defendant's false financial affidavit in support of procuring appointed counsel for the same reasons and that the effort to obtain free counsel was related to the prosecution of the instant offense), *with United States v. Khimchiachvili*, 372 F.3d 75 (2d Cir. 2004) (finding enhancement did not apply to false financial affidavit in support of appointed counsel because such affidavit did "not reveal the required obstructive intent" and the motivation was to get a free lawyer, not to "prevent justice or even delay it."), *supplemented with United States v. Sherry*, 107 F. App'x 253 (2d Cir. 2004), *vacated on other grounds sub nom. Berwick v. United States*, 544 U.S. 917 (2005) (mem).

Because we have yet to decide the issue, "the very existence of a reasonable disagreement on this point precludes the conclusion that the error was plain." *United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008); *see also United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) ("Where there are conflicting authorities, the district court could not have committed plain error.").

We also affirm the obstruction of justice enhancement under the doctrine of invited error. Under this doctrine, "when a party has himself provoked the court to commit an error, that party may not complain of the error on appeal unless that error would result in manifest injustice." *United States v. Demmler*, 655 F.3d 451, 458 (6th Cir. 2011). The doctrine "is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside[.]" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 490-91 (6th Cir. 2008) (quoting *Harvis v. Roadway Express Inc.*, 923 F.2d 59, 61 (6th Cir. 1991)). "Whether the circumstances of a particular case justify deviation from the normal rule of

waiver under this doctrine is left largely to the discretion of the appellate court." *United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997).

Here, Jallad repeatedly indicated his agreement with the PSR's and government's recommendations, which both included the obstruction of justice enhancement. He cannot now, on appeal, seek to reverse what he explicitly sought below. We have previously upheld sentencing enhancements under the invited error doctrine where defense counsel asked the court to accept the prosecutor's guideline calculations. *United States v. Meehan*, 41 F. App'x 741, 742 (6th Cir. 2002). And though invited error does not foreclose relief when the interests of justice demand otherwise, *Barrow*, 118 F.3d at 491, we find no manifest injustice here, where the application of § 3C1.1 to the facts at hand is an issue not clearly decided by this Court and one on which reasonable minds have disagreed. *Cf. United States v. Finley*, 8 F. App'x 557, 558 (6th Cir. 2001) (remanding case for resentencing even though defense counsel requested the enhancement because sentencing error was "undisputed" and both parties agreed case should be remanded).

### III.  CONCLUSION

For the reasons above, we affirm the sentence imposed by the district court.