15-2525-cr
*United States v. Hendricks*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2018

No. 15-2525-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

ROBERT HENDRICKS,
*Defendant-Appellant,*

SHAKEAL HENDRICKS, TAIQUAN HOWARD, AKA TAIQUAN HENDRICKS,
CHARLES E. ROBINSON, JR.,
*Defendants.*

On Appeal from the United States District Court
for the Northern District of New York

ARGUED: DECEMBER 5, 2018
DECIDED: APRIL 11, 2019

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges*.

———

Defendant-Appellant Robert Hendricks ("Robert") appeals from an August 4, 2015 judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Judge*) convicting him, following a trial, of (1) credit union robbery, in violation of 18 U.S.C. §§ 2113(a), 2; and (2) using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2. The District Court sentenced Robert principally to 360 months' incarceration to be followed by 5 years of supervised release. On appeal, Robert challenges the validity of his conviction for using a firearm during a crime of violence, arguing that federal credit union robbery does not qualify as a "crime of violence" for the purposes of § 924(c). He further contends that the District Court abused its discretion and denied him a fair trial by (1) excluding a photograph of the individual Robert claims actually robbed the credit union, and (2) admitting testimony of victim witnesses regarding the robbery's impact on them in the aftermath of the crime. Finally, Robert challenges his sentence and argues that the District Court plainly erred by sentencing him as a career offender under the residual clause of the 2014 edition of United States Sentencing Guidelines § 4B1.2(a)(2). We **AFFIRM** the judgment of the District Court.

RAJIT S. DOSANJH, Assistant United States Attorney, for Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

STEVEN Y. YUROWITZ, New York, NY, *for Defendant-Appellant*.

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Robert Hendricks ("Robert") appeals from an August 4, 2015 judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Judge*) convicting him, following a jury trial, of (1) credit union robbery, in violation of 18 U.S.C. §§ 2113(a), 2; and (2) using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2. The District Court sentenced Robert principally to 360 months' incarceration to be followed by 5 years of supervised release. On appeal, Robert challenges the validity of his conviction for using a firearm during a crime of violence, arguing that federal credit union robbery does not qualify as a "crime of violence" for the purposes of § 924(c). He further contends that the District Court abused its discretion and denied him a fair trial by (1) excluding a photograph of the individual Robert claims actually robbed the credit union, and (2) admitting testimony of victim witnesses regarding the robbery's impact on them in the aftermath of the crime. Finally, Robert challenges his sentence and argues that the District Court plainly erred

3

by sentencing him as a career offender under the residual clause of the 2014 edition of United States Sentencing Guidelines § 4B1.2(a)(2).

## I.    BACKGROUND

### A. The Access Federal Credit Union Robbery

On the morning of August 19, 2013, Robert Hendricks ("Robert"), Shakeal Hendricks ("Shakeal"), Taiquan Howard ("Taiquan"), and a fourth man drove to Camden, New York, where they intended to rob a credit union.[1] Deeming the operation in Camden too risky, the four moved on to another target—the Access Federal Credit Union ("AFCU") in Rome, New York.

On reaching the AFCU at approximately 12:25 p.m., the four men parked in a nearby lot. Shakeal entered the credit union lobby first while the other three men remained in the car. Shakeal approached the two tellers on duty and requested information regarding the credit union's financial services. The tellers directed him to a customer service representative's cubicle.

Shortly thereafter, at approximately 12:30 p.m., Taiquan and Robert entered the credit union brandishing handguns. Taiquan vaulted the teller's counter and pointed his handgun at the first teller, while Robert approached the second teller, who was assisting a

---

[1] Because Robert appeals from a judgment of conviction entered after a jury trial, we "draw the facts from the evidence presented at trial, viewed in the light most favorable to the government." *United States v. Thompson*, 896 F.3d 155, 159 (2d Cir. 2018) (internal quotation marks omitted). The Government alleged that Charles Robinson, Jr. was the fourth man, but he was acquitted of all charges at trial.

4

customer. Robert shoved the customer, grabbed him by the neck, pushed him down into a chair, and warned that he would "blow [him] away."[2] At the same time, Shakeal forced the customer service representative to exit her cubicle and then left the credit union. Robert pointed a gun at the customer service representative and told her to sit on the floor.

Meanwhile, Taiquan, his gun still pointed at the first teller, asked who could open the vault. The first teller responded that he could, so Taiquan forced him to do so. Robert then threw a backpack he was carrying to Taiquan to fill with money from the vault. While the first teller filled the backpack with cash, Robert remained in the lobby with his gun drawn, observing the other AFCU employees and its lone customer.

Once the backpack was full, Taiquan and Robert left the credit union. The four men then drove to a Dunkin' Donuts in East Syracuse, New York, before going their separate ways.

## B. The Government's Case at Trial

In an indictment filed on March 13, 2014, Robert, Taiquan, and Charles E. Robinson, Jr. were charged with credit union robbery, in violation of 18 U.S.C. §§ 2113(a), 2. Robert and Taiquan were also charged with using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2. Taiquan pleaded guilty to both counts, but Robert and Charles E. Robinson, Jr. proceeded to trial.

---

[2] App. 70.

Shakeal testified as a government witness pursuant to a plea agreement.

At trial, the Government elicited testimony from, among others, the three credit union employees who were present for the robbery. The Government asked these witnesses (1) how they felt during the robbery, and (2) how the robbery impacted them in the aftermath of the crime.

With respect to the latter inquiry, the Government asked the first teller whether he was "able to return to work" after the robbery.[3] He responded: "No. I tried to go to a different branch and I didn't make it behind the teller line. I walked in the back door and . . . Just a lot of fear and there's just—I couldn't do anything but just think about what happened and, no, I wasn't able to go back to work, no."[4]

The Government asked the second teller the same question. She testified that she did not return to work after the robbery because she "couldn't bring [herself] to go back in that credit union."[5]

Finally, the Government asked the customer service representative how the "experience affect[ed her]."[6] She responded: "Very leery of unfamiliar situations. If I walk around and there's a group of black men, it bothers me a little bit. I would avoid—if they

---

[3] *Id.* at 54.

[4] *Id.*

[5] *Id.* at 57.

[6] *Id.* at 65.

were like all standing in front of a store, I would avoid going in the store or go around them. I'm getting better about that, but it was a very scary situation. I didn't know what they were going to do, didn't know who they were going to hurt. My second family, you know, they were hurting our own. I see what it did to the tellers. I don't have nightmares or anything."[7]

Robert objected to the Government's question to the first teller and customer service representative based on irrelevance. He further objected to the testimony of the customer service representative as "potentially prejudicial" and "introduced for no purpose other than to inflame the jury."[8] The District Court overruled each objection.

### C. Robert's Defense

At trial, Robert did not testify and called no witnesses. Instead, he relied on cross-examination of the Government's witnesses to suggest that he was mistakenly identified as a participant in the robbery.

In support of his misidentification defense, Robert sought to implicate a third party, Jamar Sesum, a.k.a. "Bam" ("Bam").[9] While cross-examining one of the Government's witnesses, Robert sought to admit into evidence a photograph of Bam. The Government

---

[7] *Id.*

[8] *Id.*

[9] The record reflects inconsistent spelling of this individual's name. We adopt the spelling used by the parties in their briefs on appeal.

objected, but the District Court admitted the photograph "subject to connection," requiring Robert to later demonstrate its relevance.[10] At the close of trial, the Government renewed its objection, arguing that Robert had failed to show the photograph was relevant and that introducing it would confuse the jury. The District Court found Robert's contention that Bam was a third-party perpetrator "really, really, speculative" and excluded the photograph.[11]

### D. Jury Verdict and Sentencing

After deliberating for less than five hours, the jury found Robert guilty of both credit union robbery and using a firearm during a crime of violence.[12]

At sentencing, the District Court found that Robert was a "career offender" under the 2014 edition of United States Sentencing Guidelines § 4B1.1 because of his prior felony convictions for burglary in the second degree, in violation of New York Penal Law § 140.25(2), and criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39(1).[13] As a result

---

[10] App. 86.

[11] *Id*. at 175.

[12] The jury acquitted Charles E. Robinson, Jr. of credit union robbery, the sole crime with which he was charged.

[13] U.S.S.G. § 4B1.1 provides that:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony

of Robert's status as a "career offender," his advisory Guidelines range was 360 months' to life imprisonment. On July 23, 2015, the District Court sentenced Robert to 240 months' imprisonment on the credit union robbery charge and 120 months' imprisonment on the § 924(c) charge, to run consecutively, for a total effective sentence of 360 months' imprisonment. This appeal followed.

## II.   DISCUSSION

This case presents four questions:

(1) Whether federal credit union robbery, in violation of 18 U.S.C. § 2113(a), is categorically a "crime of violence" for the purposes of a conviction for using a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii);

(2) Whether the District Court abused its discretion when it admitted testimony from victims of the credit union robbery regarding the robbery's impact on them in the aftermath of the crime;

(3) Whether the District Court abused its discretion by excluding a photograph of a third party that Robert claims actually committed the robbery; and

---

that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

9

(4) Whether the District Court plainly erred in sentencing Robert as a career offender under the residual clause of the 2014 edition of United States Sentencing Guidelines § 4B1.2(a)(2).

## A. Standard of Review

We review legal questions underlying a challenge to a criminal conviction *de novo*.[14] Because Robert did not challenge the validity of his conviction under § 924(c) before the District Court, we review his conviction for plain error.[15]

The District Court's evidentiary rulings, in turn, are reviewed for abuse of discretion to the extent that they were objected to below.[16] "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational."[17] A district court "has considerable discretion in deciding whether an adequate foundation has been laid for the introduction of relevant documents."[18] This Court "accord[s] particular deference to the trial court's rulings as to foundation and relevance."[19] Similarly, we

---

[14] *United States v. Sampson*, 898 F.3d 287, 298 (2d Cir. 2018).

[15] *See United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013) (explaining "plain error" review).

[16] *United States v. Gupta*, 747 F.3d 111, 137 (2d Cir. 2014).

[17] *United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012) (internal quotation marks omitted).

[18] *Gupta*, 747 F.3d at 137.

[19] *Id.*

"accord great deference" to a district court's analysis under Federal Rule of Evidence 403.[20] Even where we conclude that a district court erred in admitting evidence under Rule 403, the error will nonetheless be deemed harmless if we conclude with "fair assurance that the jury's judgment was not substantially swayed by the error."[21]

Finally, where, as here, a defendant challenges his or her sentence on a basis not raised before the District Court, we review for plain error.[22]

### B. Credit Union Robbery as a "Crime of Violence"

Robert contends that his conviction for using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), is invalid because federal credit union robbery under 18 U.S.C. § 2113(a) is not a "crime of violence" within the meaning of § 924(c).

We begin our analysis with the relevant statutory text. Section 924(c)(1) provides that:

> (A). . . any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime,

---

[20] *Id.* at 132 (internal quotation marks omitted).

[21] *United States v. Padilla*, 548 F.3d 179, 190 (2d Cir. 2008) (internal quotation marks omitted).

[22] *United States v. Pereira-Gomez*, 903 F.3d 155, 161 (2d Cir. 2018) (describing plain error review in the sentencing context).

possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .

> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . .[23]

Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[24]

We refer to subparagraph (A) of § 924(c)(3) as the "force clause" and to subparagraph (B) as the "risk-of-force clause."[25]

To determine whether a crime is a "crime of violence" under § 924(c)(3)(A), we apply the so-called "categorical approach."[26] Under

---

[23] 18 U.S.C. § 924(c)(1)(A).

[24] *Id.* § 924(c)(3).

[25] *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018).

[26] The Supreme Court has described the categorical approach in a series of cases involving the Sentencing Guidelines and the Armed Career Criminal Act. *See Taylor v. United States*, 495 U.S. 575, 600 (1990) (holding that the categorical approach should be applied to the Armed Career Criminal Act); *see also Stokeling v. United States*, 139 S. Ct. 544, 554-55 (2019) (applying the categorical approach in evaluating Florida robbery under the force clause of the Armed Career Criminal

this "approach," we evaluate whether "the minimum criminal conduct necessary for conviction under a particular statute" necessarily involves violence.[27] In doing so, we focus only on the elements of the offense and do not consider the particular facts of the underlying crime.[28] In this case, then, we inquire whether the elements of credit union robbery necessarily involve physical force .

We have recently held that § 2113(a) is a "divisible" statute because it contains two separate paragraphs that "delineate[] two methods of committing" credit union robbery.[29] In this case, there is no dispute that Robert was charged with, and convicted of, the first method of committing credit union robbery—namely, "by force and violence, or by intimidation."[30] We therefore must determine whether credit union robbery "by force and violence, or by intimidation" categorically constitutes a "crime of violence." Perhaps unsurprisingly, we conclude that it does.

Robert argues that his conviction under § 2113(a) does not categorically constitute a "crime of violence" because one might be

---

Act); *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (applying the categorical approach to determine whether a federal crime qualified as a "crime violence" under § 924(c)(3)(A)).

[27] *Hill*, 890 F.3d at 55 (internal quotation mark omitted).

[28] *Id.*

[29] *United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019).

[30] 18 U.S.C. § 2113(a); App. 12 (operative indictment); Appellant Br. 4.

convicted under this statute by *negligently* intimidating a victim. Because a "crime of violence" generally does not "encompass accidental or negligent conduct,"[31] Robert contends the minimum criminal conduct necessary for a conviction under § 2113(a) does not necessarily involve the use or threatened use of force.

This argument is unavailing. The Supreme Court has held that § 2113(a) requires proof of "knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)."[32] With respect to the "intimidation" element, a defendant "must at least *know* that his actions would create the impression in an ordinary person that resistance would be met by force."[33] In short, *knowledge*, not merely negligence, is required.

We recently observed that "this circuit, in a summary order, and our sister circuits, in published opinions, have consistently held that federal bank robbery by intimidation is a crime of violence under the force clause of various sentence enhancement Guidelines and statutes."[34] Indeed, every circuit to have addressed the issue has held

---

[31] *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (discussing 18 U.S.C. § 16).

[32] *Carter v. United States*, 530 U.S. 255, 268 (2000).

[33] *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (emphasis added) (rejecting argument that negligent "intimidation" can support a conviction under § 2113(a)).

[34] *Moore*, 916 F.3d at 239 n.5. (citing *Killion v. United States*, 728 F. App'x 19, 21-22 (2d Cir. 2018)); *see also Johnson v. United States*, 779 F.3d 125, 128-29 (2d Cir.

that bank robbery "by intimidation" under § 2113(a) involves the threatened use of physical force and thus constitutes a crime of violence within the meaning of § 924(c)(3)(A) or the career offender guideline, U.S.S.G. § 4B1.2(a).[35]

We thus have little difficulty in holding that bank robbery committed "by intimidation" categorically constitutes a crime of violence for the purposes of § 924(c)(1)(A), and, therefore, that Robert's conviction for using a firearm during a crime of violence under § 924(c)(1)(A)(ii) does not constitute error, much less "plain error."[36]

## C. Victim Impact Testimony

Robert next argues that the District Court abused its discretion or erred by allowing the Government to question three credit union

---

2015) (stating without elaboration that bank robbery under § 2113(a) constitutes a "crime of violence" for the purposes of conviction under § 924(c)(1)(A)).

[35] *See United States v. McCranie*, 889 F.3d 677, 681 (10th Cir. 2018) (§ 4B1.2(a)); *United States v. Wilson*, 880 F.3d 80, 85-86 (3d Cir. 2018) (same); *United States v. Ellison*, 866 F.3d 32, 35 (1st Cir. 2017) (same); *United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017) (§ 924(c)(3)(A)); *United States v. Brewer*, 848 F.3d 711, 714-16 (5th Cir. 2017) (§ 4B1.2(a)); *Allen v. United States*, 836 F.3d 894, 894-95 (8th Cir. 2016) (§ 924(c)(3)(A)); *In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016) (same); *McBride*, 826 F.3d at 296 (§ 4B1.2(a)); *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (§ 924(c)(3)(A)).

[36] Because we conclude that credit union robbery "by intimidation" is a crime of violence within the meaning of the "force" clause, § 924(c)(3)(A), we need not address the parties' arguments regarding whether it also is a crime of violence under the "risk-of-force" clause, § 924(c)(3)(B).

15

employee witnesses about the robbery's impact on them in the aftermath of the crime.[37] The Government counters that such evidence was relevant to prove that Robert committed the robbery "by intimidation." Though we agree that the District Court erred, we conclude that the error was, in the circumstances presented here, harmless.

Testimony regarding a crime's impact on a victim is admissible at trial if it is relevant to prove an element of the charged offense and is subject to the normal tests for relevancy and unfair prejudice under Federal Rules of Evidence 401 and 403, respectively.[38] When evaluating the admissibility of victim impact testimony during trial, a district court should carefully consider the prejudicial potential of such testimony.

---

[37] We note that "'abuse of discretion' is a nonpejorative term of art; it implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018) (citing *In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010)). The term merely describes circumstances in which a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marksand citation omitted).

[38] *Cf. United States v. Copple*, 24 F.3d 535, 545-46 (3d Cir. 1994) (victim testimony regarding financial losses in criminal fraud trial was proper insofar as it was relevant to prove specific intent, but further victim impact testimony had little probative value and was unfairly prejudicial).

Here, Robert was charged with committing credit union robbery "by force and violence, or by intimidation."[39] A defendant acts "by intimidation" when he knowingly engages in conduct from which "an ordinary person in the teller's position reasonably could infer a threat of bodily harm."[40] Although this standard is objective, "evidence that the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances."[41]

Evidence regarding how the three credit union employees felt *during* the robbery is certainly relevant to whether Robert acted "by intimidation." Testimony regarding the robbery's impact on the victims in the *aftermath* of the crime may also be relevant to intimidation at the time of its commission. However, where—as here—the testimony concerns impact weeks and months after the

---

[39] 18 U.S.C. § 2113(a).

[40] *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) (internal quotation marks omitted); *see also* 3 LEONARD B. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS – CRIMINAL ¶ 53-12 (2018) (requiring that defendant have "act[ed] in an intimidating manner," which "means that the defendant did or said something that would make an ordinary reasonable person fear bodily harm"); *United States v. Fleury*, 38 F. App'x 50, 51 (2d Cir. 2002) (non-precedential summary order) (observing that district court used similar instruction).

[41] *United States v. Gilmore*, 282 F.3d 398, 403 (6th Cir. 2002) (internal quotation marks omitted); *cf. United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (noting that a victim's subjective state of mind can be relevant to the question of whether a defendant's behavior would inspire fear in a reasonable person for the purposes of 18 U.S.C. § 111).

crime had undisputedly ended, it likely is only minimally probative of whether Robert acted "by intimidation" *during* the robbery. Moreover, such testimony raises the specter of unfair prejudice.

We conclude that the District Court did not abuse its discretion or plainly err in determining that, for the purposes of Rule 401, the Government could ask the two tellers whether they could return to work and ask the customer service representative how the experience affected her.[42] Testimony regarding how the credit union employees felt after the robbery was relevant because the lingering effects of the robbery may tend to show that they were intimidated at the time of the robbery.

We further conclude that the District Court did not plainly err in admitting the testimony of the two tellers that they could not return to work under Rule 403.[43] The tellers' brief answers that they were unable to return to work did not carry a substantial risk of unfair prejudice.

We reach a different conclusion, however, regarding the District Court's treatment of the customer service representative's testimony. Her testimony regarding her fear of groups of black men carried a substantial risk of evoking racial bias. Accordingly, the

---

[42] Robert objected to the Government's questions to the first teller and customer service representative based on relevance, App. 54, but did not object to the Government's question to the second teller, App. 57.

[43] Robert did not object to the admission of either teller's testimony based on Rule 403.

18

District Court should have stricken this testimony or issued a curative instruction pursuant to Federal Rule of Evidence 403, and its failure to do so was an "abuse of discretion."[44]

That said, the record here permits us to conclude with "fair assurance that the jury's judgment was not substantially swayed by the error," and that the error is therefore harmless.[45] To determine whether an error is harmless, we consider "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence."[46] The strength of the prosecution's case is the most important factor.[47]

In this case, the Government's evidence against Robert was overwhelming. Shakeal Hendricks, one of the robbery participants, provided detailed testimony regarding Robert's involvement in planning and executing the crime. Laverne Hendricks, Robert's relative, testified regarding his actions on the day of the robbery and described his clothing, which was also captured in surveillance footage of the robbery. Additionally, the prosecution presented cellular telephone data placing a cell phone associated with Robert in

---

[44] *See supra* note 37.

[45] *Padilla*, 548 F.3d at 190 (internal quotation marks omitted).

[46] *United States v. McCallum*, 584 F.3d 471, 478 (2d Cir. 2009) (internal quotation marks and brackets omitted)

[47] *Id.*

the vicinity of the initial target in Camden, the AFCU in Rome, and the Dunkin' Donuts in East Syracuse. Finally, Detective Bolton of the Rome Police Department testified regarding Robert's statements during two interviews that took place on October 18, 2013 and November 22, 2013. These statements include Robert's admission that he participated in the robbery and that he disposed of clothing worn during the robbery at the Dunkin' Donuts. Detective Bolton's testimony also revealed that Robert repeatedly made false claims that he later admitted were untrue. Taken together, this overwhelming evidence of guilt assures us that the jury was not substantially swayed by the improper testimony.

We are further assured that the error is harmless because the wrongly admitted testimony was limited in scope. The improper testimony of post-incident fear or trauma was not especially important to the Government's case. All three witness properly testified regarding the fear and intimidation they experienced during the robbery, and Robert never disputed that the robbery was conducted in an objectively intimidating manner.

Accordingly, we conclude that, although the District Court abused its discretion in admitting the customer service representative's testimony regarding the robbery's impact on her in the aftermath of the crime, in the totality of circumstances presented in this record the error was harmless.

## D. Third-Party Photograph

Robert also argues that the District Court erred in excluding a photograph of Bam, who Robert contends actually committed the robbery. We disagree.

A criminal defendant generally has the right to introduce at trial evidence tending to show that another person committed the crime, so long as the evidence "sufficiently connect[s] the other person to the crime."[48] But "[t]he potential for speculation into theories of third-party culpability to open the door to tangential testimony raises serious concerns."[49] A court "must be sensitive to the special problems presented by 'alternative perpetrator' evidence" and must ensure that the defendant shows a "sufficient . . . nexus between the crime charged and the asserted 'alternative perpetrator.'"[50]

Robert contends that he laid a sufficient foundation to support the introduction of Bam's photograph. He points to the following evidence: (1) Shakeal's testimony that he (Shakeal) and Bam were close friends; (2) an eye-witness account describing "two kids" running away from the robbery, even though Robert was 55 years old at the time; (3) records showing phone calls between Shakeal's phone and Bam's phone before and after the robbery; and

---

[48] *White*, 692 F.3d at 246 (internal quotation marks omitted).

[49] *Wade v. Mantello*, 333 F.3d 51, 61 (2d Cir. 2003).

[50] *Id.* at 61-62 (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

(4) Shakeal's testimony that he went shopping for sneakers with Bam after the robbery.

Like the District Court, we conclude that this evidence is insufficient to show the required nexus between Bam and the robbery. Although the evidence Robert cites might tend to show that Bam knew about the robbery, none of the evidence places Bam anywhere near the robbery scene or suggests that he was otherwise involved in the crime. Accordingly, the District Court did not err in excluding Bam's photograph.

## E. Application of the Career Offender Guidelines

Finally, Robert contends that the District Court erred in finding that he was subject to sentencing as a "career offender" under the 2014 edition of United States Sentencing Guidelines § 4B1.1.[51] Specifically, he argues that his prior felony conviction for burglary in the second degree, in violation of New York Penal Law § 140.25, does not constitute a "crime of violence" for the purposes of the career offender Guidelines. We are not persuaded.

Section 4B1.1 provides that:

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a

---

[51] We generally apply the version of the United States Sentencing Guidelines in effect at the time of sentencing, unless doing so would violate the Ex Post Facto Clause. *United States v. Riggi*, 649 F.3d 143, 146 n.2 (2d Cir. 2011).

crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[52]

The 2014 Sentencing Guidelines Manual defines "crime of violence" to mean any state or federal offense, punishable by imprisonment for a term exceeding one year, that:

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is a burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.[53]

Robert contends that his conviction for second-degree burglary under New York law does not qualify as a "crime of violence" because the "residual clause" is void for vagueness. But this argument is foreclosed by the Supreme Court's recent decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), in which the Court concluded that the Sentencing Guidelines are not subject to void-for-vagueness challenges and upheld the career offender Guidelines.

---

[52] U.S.S.G. § 4B1.1(a).

[53] U.S.S.G. § 4B1.2(a) (emphasis added). The italicized text is generally referred to as the "residual clause."

23

We have already held that third-degree burglary under New York law qualifies as a "crime of violence" under the residual clause of § 4B1.2(a)(2).[54] In light of *Beckles*, it is clear that this holding remains good law.[55] Because, under New York law, third-degree burglary defines the lesser-included offense of burglary,[56] we have no difficulty extending this holding to Robert's second-degree burglary conviction.[57] Accordingly, the District Court did not err, much less plainly err, in sentencing Robert as a career offender pursuant to § 4B1.2(a)(2).

---

[54] *United States v. Brown*, 514 F.3d 256, 268 (2d Cir. 2008).

[55] We had previously stated that this holding was abrogated by *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the similarly-worded residual clause of the Armed Career Criminal Act was unconstitutional. *See United States v. Welch*, 641 F. App'x 37, 43 (2d Cir. 2016) (non-precedential summary order). In light of *Beckles*, however, it is clear that the residual clause of the Guidelines is not unconstitutionally vague. *See also Massey v. United States*, 895 F.3d 248, 251 n.6 (2d Cir. 2018). (noting that after *Beckles*, the Second Circuit's earlier precedent that robbery under New York law is a crime of violence under the ACCA's force clause was "reinstate[d]").

[56] *People v. Barney*, 99 N.Y.2d 367, 371 (2003) (holding that, under New York law, "one cannot commit burglary in the second degree . . . without also committing burglary in the third degree").

[57] *Cf. Pereira-Gomez*, 903 F.3d at 166 (holding that because the pertinent component of robbery "is common to all degrees of robbery under New York law . . . robbery in any degree is a crime of violence").

### III. CONCLUSION

To summarize, we hold as follows:

(1) Credit union robbery, in violation of 18 U.S.C. § 2113(a), qualifies as a "crime of violence" under the "force clause" of § 924(c)(3)(A) for the purposes of Robert's conviction under 18 U.S.C. § 924(c)(1)(A)(ii);

(2) While the District Court erred or "abused its discretion" in admitting certain victim impact testimony, the error was harmless in this particular case in light of the substantial evidence of Robert's guilt;

(3) The District Court did not err or "abuse its discretion" in excluding a photograph of an alleged third-party perpetrator because Robert failed to establish a sufficient nexus between the third party and the crime; and

(4) The District Court did not err, much less plainly err, in sentencing Robert as a career offender under the 2014 edition of United States Sentencing Guidelines § 4B1.2(a)(2).

For the foregoing reasons, we **AFFIRM** the August 4, 2015 judgment of the District Court.