*United States v. Rodriguez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of May, two thousand twenty-five.

PRESENT:

> ROBERT D. SACK,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                      No. 23-7280

JOSHUA RODRIGUEZ,

> *Defendant-Appellant*.

_____

FOR APPELLANT-DEFENDANT:           JAMESA J. DRAKE, Drake Law LLC, Auburn, ME.

FOR APPELLEE:                                    COURTNEY HEAVEY (Mathew Andrews, James Ligtenberg, Stephanie Simon, *on the brief*), Assistant United States Attorneys, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from a criminal judgment entered in the United States District Court for the Southern District of New York (Rakoff, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 26, 2023, is **AFFIRMED.**

Defendant-Appellant Joshua Rodriguez appeals from a criminal judgment convicting him following a jury trial of, among other charges, murder through the use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(j)(1).[1] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

---

[1] Rodriguez was also convicted of (1) conspiracy to distribute or possess with intent to distribute marijuana in violation of 8 U.S.C. §§ 846, 841(b)(1)(C); and (2) possessing with intent to distribute marijuana in violation of 8 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(D). He does not challenge those convictions on appeal.

The government introduced evidence at trial that Rodriguez sold marijuana at 1408 Webster in the Bronx. In 2017, Jaquan Millien began selling marijuana from the sixth floor of 1408 Webster, where his girlfriend, Yanellie Ramirez, lived. Rodriguez was upset that Millien's marijuana business competed with his.

About six months after a physical altercation between Rodriguez and Millien arising from this conflict, in October 2018, Millien was fatally shot in the stairwell of 1408 Webster. His five-year-old son was also shot but survived the incident. Edwin Mena—a resident of the building at the time who was dating Rodriguez's mother and was thus familiar with Rodriguez—heard a noise from the gunshots and went into the hallway of the eighth floor to see what happened. He heard crying from one of the stairwells, opened the door and started going down, then saw Rodriguez running up the staircase with a gun in his hand stating that he had just shot somebody. A couple of months later, at a holiday party, Rodriguez told Mena that he did not know why he did it.

On the basis of this and other evidence, the jury convicted Rodriguez on the murder charge. On appeal, he challenges two of the district court's rulings.

## I.  Present Sense Impression Evidence

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard." *United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025).

Ramirez testified that two or three times between 2017 and 2018, Rodriguez asked to speak with Millien in the sixth-floor hallway of 1408 Webster. Millien complied and, after each occasion, "[a]s soon as" Millien came back inside Ramirez's apartment, he told her that Rodriguez said "he didn't want [Millien] to have customers come upstairs to the sixth floor." App'x 32. The district court admitted these statements over Rodriguez's objection, determining that they were admissible as "present sense impressions" because the statements were made "immediate[ly] or close to immediate[ly]" following Millien's conversations with Rodriguez. App'x 25–26. Rodriguez challenges that ruling on appeal.

A present sense impression is defined as "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v.*

*Jones*, 299 F.3d 103, 112 (2d Cir. 2002).[2] Thus, present sense impressions are exceptions to the general rule against hearsay. *Id.*

Asserting that there was a five-minute lapse between Millien's encounters with Rodriguez and his statements to Ramirez, Rodriguez argues that the court should have excluded Ramirez's recounting of Millien's statements due to the time lapse combined with Millien's "motive for insincerity" because of his competition with Rodriguez. Appellant's Br. at 23–24. But the record does not support Rodriguez's premise that there was a five-minute lapse. While each encounter with Rodriguez lasted approximately five minutes, Ramirez testified that Millien reported the events to her "as soon as" they ended and Millien reentered her apartment. App'x 32. The advisory committee notes to Rule 803 recognize that "in many, if not most[] instances[,] precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803(1) advisory committee's note (1972). And, here, the declarant—Millien—reported the events "immediately after" they occurred, as permitted by the plain text of Rule 803(1).

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

To the extent that Millien had a "motive for insincerity," as Rodriguez argues, that goes to the weight of the evidence, not its admissibility, and Rodriguez could have explored any such motivation on cross-examination. *See, e.g.*, *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) (Where a challenge "do[es] not bear upon the admissibility of evidence" and instead "only [on] the weight of the evidence," there is no "basis for reversal.").

We also reject Rodriguez's argument that the district court committed reversible error by allowing Ramirez to offer only summaries of what Millien said rather than "precise statement[s]." Appellant's Br. at 24. Neither party points to any binding precedent involving a present sense impression summarizing or paraphrasing a statement. But even if Ramirez's summary was not permissible, any error here was harmless. *See, e.g.*, *United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006).

"An erroneous ruling on the admissibility of evidence is harmless if [we] can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017). The test for harmless error is not whether "disregarding the erroneously introduced evidence, there was other evidence which was independently sufficient to establish [the

defendant's] guilt."  *Id.*  "Rather, we must evaluate the manner in which, in the total setting of the case, the error influenced the jury."  *Id.*  "The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict."  *United States v. Colombo*, 909 F.2d 711, 714 (2d Cir. 1990).

Here, the objected-to testimony established that Rodriguez warned Millien not to sell marijuana in the 1408 Webster building.  At most, the statements corroborated other admitted evidence to which Rodriguez did not object.  Most significantly, Ramirez testified that in March 2018 Rodriguez and Millien were in a physical altercation on the sixth floor of 1408 Webster, which she helped break up.  In the altercation, Rodriguez drew a blade on Millien, and Millien punched Rodriguez.  After the fight, Rodriguez warned Ramirez that she should not allow Millien to sell marijuana from her apartment.  Rodriguez's hospital records from March 2018 reflected a report of jaw pain resulting from "blunt force trauma to [his] jaw" sustained during a "fight."  June 1, 2023 Trial Tr. 184:3–85:16, No. 22-cr-316 (S.D.N.Y. July 19, 2023), ECF No. 53.

Moreover, Mark Martinez, who lived across the street from 1408 Webster and bought marijuana from both Rodriguez and Millien, testified that he saw

7

Rodriguez follow people who were buying marijuana from Millien into 1408 Webster and that Rodriguez was "pissed off." *Id.* at 203:12–15; *see also id.* at 203–04. This evidence highlighted a conflict between Rodriguez and Millien about marijuana sales in 1408 Webster wholly independent of the objected-to statements. Because Millien's statements admitted as present sense impressions are "cumulative" of other "ample evidence" of a dispute between Millien and Rodriguez over marijuana sales at 1408 Webster, any claimed error was harmless. *United States v. Ivezaj*, 568 F.3d 88, 98–99 (2d Cir. 2009).

## II. Summation

During trial, a question arose as to whether Rodriguez could pursue an "alternative perpetrator" defense, highlighting the presence of other rival dealers who had incentives to harm Millien. Rodriguez explained that he did not have "any particular evidence . . . establishing a nexus to a particular individual as the alternative perpetrator," but that he wanted to argue in closing, based on the government's evidence, that there "were multiple individuals who had the motive and the opportunity" to murder Millien. App'x 37. Specifically, Rodriguez points to Martinez's testimony that individuals selling drugs in the Butler houses—1368

Webster and 1408 Webster—could not go to the opposite building to sell drugs as that could be perceived as infringing upon someone else's turf.

The district court determined that this testimony was "insufficient to establish the requisite nexus" for an alternative perpetrator defense, and it indicated that "subject to whatever else emerges in the evidence," it would not permit Rodriguez to make an "alternative perpetrator" argument in summation. App'x 36.

Before summation, Rodriguez's counsel revisited the district court's ruling, saying, "I understand I'm not permitted to say that any other particular individual was the perpetrator . . . but I'm certainly free to argue that there's no proof that my client is the one who did it, and that perhaps someone else did it and was not caught." June 5, 2023 Trial Tr. 618:23-19:2, No. 22-cr-316 (S.D.N.Y. July 19, 2023), ECF No. 59.

The government responded that Rodriguez was free to argue that somebody else could have done it, but was not allowed to argue that someone else did it "because you heard about some drug beef going or some generalized drug dispute . . . or maybe he was robbed or maybe this was [one of Rodriguez's identified confederates in selling marijuana], without any actual nexus." *Id.* at

620:21-24. Defense counsel responded, "I wasn't going to argue any of those things," and the court noted they apparently had an agreement. *Id.* at 621:2-3.

In closing, defendant highlighted testimony about other individuals who sold marijuana at 1408 Webster, and about the turf war involving individuals from across the street coming into 1408 Webster and making money selling drugs. But Rodriguez was precluded from arguing specifically that other dealers seeking to protect their turf at 1408 Webster might have killed Millien.

We review a court's decision "to limit the scope of summation" for abuse of discretion. *United States v. Lee*, 834 F.3d 145, 161 (2d Cir. 2016); *cf. United States v. Ulbricht*, 858 F.3d 71, 119–20 (2d Cir. 2017) (reviewing a district court's decision whether to permit a defendant to elicit testimony concerning an alternative perpetrator for abuse of discretion), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).

"Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to

show a nexus between the crime charged and the asserted alternative perpetrator." *Wade v. Mantello*, 333 F.3d 51, 61–62 (2d Cir. 2003). Speculation is insufficient. *Id.*

For example, in *United States v. Hendricks*, 921 F.3d 320 (2d Cir. 2019), we determined that the defendant did not sufficiently support a misidentification defense where he pointed to a specific third party who was close with one of the alleged co-conspirators, was closer to the perpetrator's age as estimated by an eyewitness, and got a call from the co-conspirator before and after the robbery. *Id.* at 331. Because the evidence did not place the third party near the crime scene or otherwise establish that he was involved in the crime, we concluded that the district court did not abuse its discretion in excluding evidence of the third party. *Id.*

As Rodriguez concedes here, there was no evidence of a nexus between any alternative perpetrator and the murder. On this record, the district court acted within its discretion in limiting closing arguments to the evidence "actually presented in the case." *United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001).

\* \* \*

For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11